**CITY OF DAYTONA BEACH, Appellant,**

v.

**GANNETT FLEMING CORDDRY AND CARPENTER, Inc., Appellee.**

**No. 16758.**

United States Court of Appeals
Fifth Circuit.

April 7, 1958.

Rehearing Denied May 16, 1958.

John R. Parkinson, Parkinson & Sessions, Daytona Beach, Fla., for appellant.

Paul E. Raymond, Daytona Beach, Fla., William A. Hamilton, Jacksonville, Fla., Raymond, Wilson & Karl, Daytona Beach, Fla., and Jennings, Watts, Clarke & Hamilton, Jacksonville, Fla., of counsel, for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the City of Daytona Beach, the plaintiff, from orders dismissing and striking certain tort allegations of its complaint without leave to amend and denying its motion for summary judgment and granting defendant's motion for summary judgment upon plaintiff's restitution claim. In this action the City seeks to recover from the defendant, a corporation composed of engineers, damages for the defendant's willful or reckless or negligent performance of its duties under a contract and certain alleged overpayments made to the defendant pursuant to the contract.

The defendant was engaged by the City during 1949–1950 to design, supervise, and inspect the construction of a city-wide paving and street improvement pro-

gram.[1] The actual construction was done by three other corporations not parties to this litigation. During 1949 and 1950 the defendant submitted various invoices to the City covering claimed expenses and fees under the contract terms, which were paid by the City. The principal item of contention involved in the overpayment claim concerns the contract clause which entitled the engineers to "3% of the estimated cost, to be revised upward or downward when the final construction cost is known." The City accepted a bid from a contractor for $2,340,849.66 which was finally let at $2,242,099.66, and had the 3% compensation been computed upon this amount the engineers would have received $67,262.00. However, when the work was completed by the contractors the total payments amounted to $2,020,542.64, which figure, if controlling, would have entitled the engineers to $60,616.28. The City maintains that the last mentioned figure is the "final construction cost" and that the defendants were overpaid by $5,383.72 since they received $66,000. The City further contends that rent for the defendant's Daytona Beach office and the salary for the stenographer in the Daytona Beach office as well as part of the salaries of the president and vice president of the defendant charged to the job were improper items under the "cost plus" part of the contract. The then City Manager and City Engineer settled with the defendants with the result that the City paid a $66,000 fee on the original contract, a $7,197.52 fee for subsequent plans for storm sewers, and all the overhead expenses claimed by the engineers which amounted to $62,691.14. The members of the then city commission approved these dealings informally, and there is now a question of proper authority. In the stricken allegations the City alleged that the engineers performed their work in such a negligent, reckless, or willful manner as to thereby cause unnecessary expenses and a defective final product.

The initial issue is whether, as a matter of tort law, the plaintiff has stated a claim upon which relief may be granted in regard to the acts of the defendant in the performance of its duties under the contract. It appears clear to us that such a claim has been presented and that the motion to strike and dismiss should have been denied. Under the Federal Rules of Civil Procedure, 28 U.S.C.A., detailed pleading is not required, and once a legal duty appears, it is sufficient against a motion to dismiss to allege that the defendant acted in a negligent manner and as a result the plaintiff was injured. Carss v. Outboard Marine Corporation, 5 Cir., 252 F.2d 690; Des Isles v. Evans, 5 Cir., 200 F.2d 614; Augusta Broadcasting Co. v. United States, 5 Cir., 170 F.2d 199. A complaint must be held sufficient if, on any view of the allegations, plaintiff states facts sufficient to entitle him to relief. Guth v. Texas Co., 7 Cir., 155 F.2d 563. And negligence, recklessness, and willfulness may be pleaded in the alternative. Official Form 10, F.R.C.P. Appendix of Forms 28 U.S.C.A.; Moore's Federal Practice ¶8.31.

By alleging the contract provision by which the defendants undertook to pre-

---

1. The relevant portions of the agreement are as follows: Charges and Payment for Engineering Work—

We agree to accept as full payment for the services rendered under this proposal the following:

For study and report—$7,000.

For detailed plans and specifications—3% of the estimated cost, to be revised upward or downward when the final construction cost is known.

For inspection and supervision of construction—Actual cost plus 50%.

Under this item, the actual cost would not include solicitation, rent, taxes, clerical or accounting help, or costs of any nature of our Harrisburg office. The actual costs would include only those items which would be directly chargeable to the work. We would plan to employ one survey corp; an inspector for the mixing plant and for each place the contractor was working; a Chief Engineer; and monthly supervision from our main office.

pare specifications, to inspect and supervise construction, and the representation by the engineers that they were a nationally recognized engineering organization with vast experience and possessing requisite skill and knowledge to perform the engineering work, plaintiff has alleged a duty and standard of care owed to it by the defendant. The complaint alleges breach of this duty in several instances. The engineers, it is maintained, recommended the use of Trinidad Lake asphalt cement, the price of which was over two and one-half times that of petroleum asphalt cement and which was not of a superior quality and was no longer being recommended for paving work in Florida, facts which competent engineers did know or should have known. Further, it is claimed that defendant failed to insert a provision in the specification included in the contract with the contractor whereby the contract prices of asphalt courses would be reduced in the event the percentages of asphalt cement used should be reduced, and that by the exercise of ordinary skill and care the defendant should have known this failure would increase plaintiff's costs. When less asphalt cement was used, plaintiff, under the specifications could receive no reduction, and its costs were unnecessarily increased. Moreover, it is alleged that the engineers allowed defective concrete pipe to be used and the joints in the piping to be cemented in a manner not according to specifications. It is claimed that the engineer's plans for laying asphalt courses over the old brick streets were negligently drawn because they should have known that this surface would not remain long on this base. The plaintiffs have attached photographs to their complaint in an effort to demonstrate that the asphalt surfaces did slide off of the brick over which they were laid. The complaint also alleges that the defendant falsely or negligently certified to the plaintiff that the contractor was entitled to increases in the prices of certain materials. It is claimed that as a proximate result of defendant's alleged negligent or willful acts and omissions plaintiff's costs were increased, and the defective paving has cracked so that it will soon have to be replaced, and the storm sewers have already required repairs and replacement.

Thus it appears that the plaintiff has alleged enough facts to set out a sufficient cause of action against the defendant for breach of duty either by negligence, recklessness, or willfulness. Under the allegations of the complaint the engineers owed a duty to their employer to exercise and apply their skills and ability, judgment and taste, reasonably and without neglect. See Bayshore Development Co. v. Bondfoey, 1918, 75 Fla. 455, 78 So. 507, L.R.A.1918D, 889.

Holding as we do on the tort allegations, we must then find that the grant of the motion for summary judgment was improper. Upon reinstating these stricken allegations into the complaint there are, of course, contested issues of fact concerning them. It thus becomes evident that the litigation was not ripe for summary judgment. The affidavits presented to the court below by the defendants in support of their motion for summary judgment pertained only to the restitution issue.

To determine whether the plaintiff can recover any of the alleged overpayments the court below will have to decide several issues which we have not as yet considered. We think we should not do so until the trial court expressly passes on these matters. It must ascertain whether Sections 124 and 125 [2] of the Charter of

2. "Sec. 124. Expenditures in Excess of Five Hundred Dollars.

"When an expenditure other than the compensation of persons employed by the city, exceeds five hundred dollars, such expenditures shall be first authorized and directed by resolution of the city commission, and no contract involving an expenditure in excess of such sum shall be made or awarded except upon the approval of the city manager and the city commission, and all improvements, materials, supplies and work of all kinds and for any purpose done, rendered, supplied or performed for said city (not including work done in the operation of any

the City of Daytona Beach are applicable in this case to require competitive bidding and a formal resolution of the city commission. The affidavits of the City Clerk show that these requisites were not met in this instance or at the time of hiring of other engineering consulting firms since 1944. Appellees contend that the exception, "other than the compensation of persons employed by the city," includes an engineering organization that only provides plans and personal services; that if the clause were intended to exclude from the section only regular salaried employees it could have stated so in a more explicit manner. If the agreement with the engineers must comply with the terms of these sections, the trial court must decide whether the original acts and the subsequent agreements and settlements between the parties are ultra vires and void on the part of the municipal corporation, since there appeared to be no competitive bidding and no formal resolution of the city commission. Depending on its decision on this issue, the court, even if the agreements were authorized, might have to ascertain whether the City can recover its payments on theories of mistake of fact,

mistake of law, or fraud. This question presents issues of fact. Then if a recovery would be permitted in general, there would have to be a determination of whether there were actual overpayments in the individual instances. This would require an interpretation of the clause "3% of the estimated cost, to be revised upward or downward when the final construction cost is known," as to whether the amount actually paid by the city to the contractor or the amount for which the contract was to be let were to be used. Interpretation would also be needed for the clause of the cost plus agreement "the actual cost would not include solicitation, rent, taxes, clerical, or accounting help, or costs of any nature of our Harrisburg office" as to whether the intent had been to exclude the enumerated items only to the extent that they pertain to defendant's Harrisburg office or as to the Daytona Beach office as well. All of these matters, if reached, should first be resolved by the trial court.

The order and judgment of the district court are reversed and the case is remanded for further proceedings not inconsistent with this opinion.

of the city departments) amounting to more than five hundred dollars, shall be let by contract to the lowest and best responsible bidder, according to written specifications previously prescribed therefor and after publication in a newspaper of general circulation one time of a notice calling for such bids, the first publication to be not less than ten days before the date for the receiving of such bids, and any contract made in violation of this section shall be invalid and unforceable; provided that if the city commission shall, after receiving bids for such improvements, materials, supplies and work as aforesaid be of the opinion that the bids are excessive, unreasonable or increase the cost of such improvements, materials, supplies and work over the actual cost thereof if done or supplied by the city itself, or be of the opinion that there is reasonable ground for suspecting or believing that there exists a combination of bidders to unduly in-

crease the cost thereof, or prevent free competition among said bidders, then the city commission may reject any and all such bids and authorize the improvements, materials, supplies and work to be done, furnished or performed by the city in any manner prescribed by the city commission without the necessity of asking for additional bids.
"Sec. 125. Alteration Or Modification Of Contracts.
"When in the opinion of the city manager it becomes necessary for the prosecution of any work or improvement under the contract, to make alteration or modifications in such contract, such alterations or modifications if made shall be of no effect until the price to be paid for the work or material, or both, under altered or modified contract has been agreed upon in writing and signed by the contractor and by the city manager and approved by the city commission."