Frank SPALITTA, as Guardian of the Minors, Karen Elizabeth and Gina Theresa Spalitta, Plaintiff-Appellant,

v.

NATIONAL AMERICAN BANK OF NEW ORLEANS et al., Defendants-Appellees.

No. 29622.

United States Court of Appeals, Fifth Circuit.

May 26, 1971.

James J. Morrison, New Orleans, La., Paul C. Tate, Mamou, La., for appellant.

Peter J. Butler, Clem Sehrt, Moise S. Steeg, Jr., Sehrt, Boyle, Wheeler & Butler, New Orleans, La., Steeg & Shushan, New Orleans, La., of counsel, for appellees.

Before CLARK, Associate Justice,* and GEWIN and RONEY, Circuit Judges.

CLARK, Associate Justice:

This is an appeal from the decision of the United States District Court for the Eastern District of Louisiana dismissing a stockholders' derivative and class action based on alleged violations of the National Banking Act.[1] The appellant filed the suit as guardian of his two minor daughters who owned 25 shares of stock of the National American Bank of New Orleans, La. The appellees are the Bank, as a nominal party, and some of its officers and directors who are alleged to be the principal executive officers and directors of the Bank and actually control it. The suit was brought for the benefit of the Bank as a class action on behalf of all stockholders simi-

---

* Associate Justice, United States Supreme Court (Ret.), sitting by designation.

1. It was alleged (a) that the Bank with the knowledge of its officers and directors made loans in excess of the legal limits prescribed by 12 U.S.C. § 84, made actionable by 12 U.S.C. § 93, and (b) that Louis J. Roussel as a director and principal shareholder obtained financial benefits for making or extending loans in violation of 18 U.S.C. § 215, made actionable by 12 U.S.C. § 503.

larly situated. The gist of the complaint is that the Bank has suffered substantial losses because of certain fraudulent and illegal acts and transactions of the appellee officers and directors which were in breach of their fiduciary responsibility. The trial court dismissed the action on motion of the appellees, finding that some of the claims were barred by the contemporary ownership rule, which requires that the acts complained of occur while the complainant is a stockholder; another claim was held premature because the property involved was in litigation in another Division of the Court; and a final claim was held moot since the alleged gift of properties to three vice presidents of the Bank in connection with banking transactions had been reconveyed to the grantor's successor, the Trustee in Bankruptcy. We have examined the record carefully and have concluded that the motion to dismiss should not have been granted. We, therefore, vacate the judgment and remand the case for trial. We pretermit the issue as to the refusal of the trial judge to recuse himself. As appellees indicate, the trial of the case on remand will be by another judge which will avoid the issue. The case has been re-allotted twice before which indicates that perhaps it may be one of those unusual cases where the assignment of a judge from another district may be necessary.

## I.

The case being here on an order sustaining a motion to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted, we must accept the facts that are well pleaded to be true and resolve them in the light most favorable to the appellants. To sustain the dismissal we must conclude that plaintiff can prove no facts entitling him to relief. Conley v. Gibson, 355 U.S. 41, 45–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957);[2] Mitchell v. E–Z Way Towers Inc., 269 F.2d 126 (C.A.5, 1959); City of Daytona Beach v. Gannett, Fleming Corddry & Carpenter Inc., 253 F.2d 771 (C.A.5, 1958); Eyerly Aircraft Co. v. Killian, 414 F.2d 591, 602 (C.A.5, 1969).

The complaint consists of 22 pages of allegations with seven exhibits of which number 7 is itself over 50 pages with attached schedules. Appellant alleges a conspiracy among the individual appellees to use their official connections with the Bank to serve their own private gain, pecuniary aggrandizement and benefit. Specifically it alleges that the general pattern of manipulation was for appellee Louis J. Roussel to become the principal banker and trusted financial advisor to certain customers of the Bank who would, in this fiduciary relationship, give to Roussel full and complete information as to the financial condition and needs of the customer. Having gained the confidence of such customers Roussel would through the aid of other appellees and as a Director and member of the Executive and Loan Committee of the Bank, manipulate loans, swap and shift collateral, call obligations prior to due dates, exceed permissible loan limits and secrete the same from bank examiners through the shifting of loans and

---

2. The Court there established the following principles:

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. at 102.

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. * * * The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." 355 U.S. at 47–48, 78 S.Ct. at 103.

creating additional corporate creditors owned by the same customer or customers among which the overline was spread. In consideration of these manipulations Roussel would exact fees, emoluments, gifts, etc. from the favored customer for himself or his nominees, all in violation of the National Banking Act.

The complaint gives names and dates of various manipulations and asserts that as a result the Bank made over $10 million of real estate loans to one customer, Sam Recile, now in bankruptcy. And further that an additional $6 million of bank funds are presently frozen in bankruptcy cases.

One customer of the Bank and alleged victim of the conspiracy comes in for special attention, one Sam Recile. Beginning in 1961 and continuing until his bankruptcy, a long list of exactions were extracted from Recile by Roussel and other appellees, all of which arose out of transactions with the Bank. They include cash payments, transfers, sales, gifts and swaps to Roussel and his nominees in consideration of present or prior favors from the Bank including not only overline credit but renewals, shift of collateral, etc. Among the properties alleged to have been involved in these transactions was mineral land valued at $1 million; three buildings in New Orleans valued at several million dollars; two buildings at the Park Chester Shopping Center worth $200,000; mineral interests through Republic Petroleum Company, $200,000; and 30 acres of Tanglewood Estates that was deeded to three vice presidents of the Bank and retroceded to his Trustee after Recile's bankruptcy.

We do not detail all of the overt acts alleged in the complaint and attached exhibits but have selected representative samplings from those alleged therein.

## II.

The District Judge dismissed the case on February 11, 1970, with the following order:

"IT IS ORDERED that the motion by defendants to dismiss is hereby granted.

Eight counts of the petition are invalid under 28 U.S.C. 231 and LA CCP 596(1) the transactions complained of must have occurred when plaintiffs were stockholders.

The ninth count is premature as the status of the property located at 225 Baronne Street is presently in litigation in Judge Heebe's division of this Court.

Count ten is moot as the property in question has been reconveyed by request of the Court to the Trustee in Bankruptcy for Sam J. Recile."

■ Under this order the trial court subsumed—and we agree—that the appellant had standing to sue both on the derivative as well as the class action. But it found fault with what it construed to be the ten counts on which the appellant based his action. As the appellees point out, the ten count reference has to do with Article XXII of the complaint only. The court does not touch upon the remaining claims alleged. For example, Article XX alleges seven specific overt acts based upon violations of the National Banking Act. The first five have to do with the Sam Recile overline transactions and the sixth and seventh with another claim with reference to The Five Flags Building, Inc. and the Henican loan "to deceive the bank examiners," a violation of 18 U.S.C. 1005 which visits liability under 12 U.S.C. 503 upon the appellees as officers and directors of the Bank. Likewise Article XXIII alleges three other manipulations, all within the ambit of the conspiracy, and covering the Audubon Building, the Parkchester Shopping Center, the Bankers Union Life Insurance Company, and the 500 acre Sotan Tract.

■ Moreover, this is a class action to which the contemporaneous ownership rule would not apply. Zahn v. Transamerica Corp., 162 F.2d 36, 48 (C.A.3, 1947); see also Surowitz v. Hilton Ho-

tels Corp., 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807, 12 U.S.C. § 52, where the Court said:

"We cannot construe Rule 23 or any other one of the Federal Rules as compelling courts to summarily dismiss, without any answer or argument at all, cases like this where grave charges of fraud are shown by the record to be based on reasonable beliefs growing out of careful investigation."

 Furthermore, a conspiracy is alleged along with a continuous course of illegal conduct beginning in 1961 in violation of the National Banking Act which raises a federal question. Nor is the 225 Baronne Street transaction premature because of the bankruptcy. The adjudication here would not affect the bankruptcy since the recovery sought is not the property but judgment against appellees for the damage if any the Bank has suffered by reason of the illegal transaction. This is likewise true of the property in Tanglewood Estates which was conveyed to the Trustee in Bankruptcy. The appellant seeks damages for the Bank against the three vice presidents and not the return of the property. Cf. Corsicana National Bank v. Johnson, 251 U.S. 68, 83–84, 40 S.Ct. 82, 64 L.Ed. 141 (1919).

We also note that the suit is for an accounting of the various matters between the Bank and the appellees which would likewise be within the jurisdiction of the Court.

### III.

While the complaint is perhaps not an example of excellence in pleading, we believe it quite sufficient under Conley v. Gibson, supra, to withstand the motion to dismiss which must be strictly construed against the moving party. Moreover, the atmosphere surrounding the complaint is an odious one that is imbued with a public interest and requires decision upon evidence not pleading. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).[3]

Since the case must be tried on some of the claims at the least, we believe the effective administration of justice requires that the judgment be vacated as to the entire complaint. Perhaps before trial the appellant will clarify his contentions by amended pleading. The judgment is therefore vacated and the cause remanded for trial on its merits.

3. "We believe that summary procedures should be used sparingly in complex * * * litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."