Nora TWYMAN et al.

v.

**ROCKVILLE HOUSING AUTHORITY et al.**

Civ. No. Y-82-2014.

United States District Court, D. Maryland.

Sept. 27, 1983.

Linda Haspel, Silver Spring, Md., and Kathleen C. Murray, Baltimore, Md., for plaintiffs.

Kenneth B. Tecler, Rockville, Md., for defendants.

JOSEPH H. YOUNG, District Judge.

## MEMORANDUM OPINION AND ORDER

Plaintiffs in the above numbered action have moved for certification of a class seeking injunctive relief pursuant to Fed.R. Civ.P. 23(b)(2). After careful consideration of the fairly extensive record and the relevant authorities, the Court grants plaintiffs' motion in part and denies it in part. The Court concludes that a class action may be appropriately maintained on all issues except for defendant Rockville Housing Authority's previous practice of charging its tenants an automatic $20.00 "legal fee" upon the institution of state court ejectment proceedings. The Court also disqualifies plaintiffs Furtick and Hawkins from further participation in the case as representative parties. A fuller explanation of the basis for these rulings follows:

## CLASS CERTIFICATION PROCEDURE

Fed.R.Civ.P. 23(c)(1) provides:

As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

Plaintiffs bear the burden of proof in establishing class status. *International Woodworkers v. Chesapeake Bay Plywood*, 659

F.2d 1259, 1267 (4th Cir.1981); *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n. 6 (4th Cir.1977) (en banc). The Fourth Circuit has repeatedly stressed the need for detailed written findings on whether or not plaintiffs have met their burden. *See, e.g., International Woodworkers*, 659 F.2d at 1268; *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1312–13 (4th Cir.1978). In making this determination, the Court should consider any discovery directed to the certification issue. *International Woodworkers*, 659 F.2d at 1268; *Shelton v. Pargo*, 582 F.2d at 1312–13; *Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 699 (4th Cir.1976) (affirming certification based upon review of discovery). In addition, "[w]here facts developed during discovery proceedings are inadequate, an evidentiary hearing should be held." *International Woodworkers*, 659 F.2d at 1268.

The present case has had relative extensive discovery on the certification issue. A review of the discovery plainly indicates the propriety of the previously mentioned rulings at this point in the litigation, and an evidentiary hearing is unnecessary. *Id.* However, an initial certification decision is inherently tentative and open for later reconsideration if appropriate. *See* Fed.R.Civ.P. 23(c)(1); *Stastny v. Southern Bell Telephone and Telegraph Co.*, 628 F.2d 267, 275–76 (4th Cir.1980).

## FACTUAL ALLEGATIONS

The named plaintiffs reside in low income public housing units administered by defendant Rockville Housing Authority ("RHA") in Rockville, Maryland. RHA is a state chartered corporate body [1] which owns and operates approximately one hundred fifty (150) low income units. The United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. §§ 1437–1437n, authorizes the Secretary of the Department of Housing and Urban Development ("HUD") to grant federal subsidies to local housing authorities such as RHA for the purpose of

---

1. The RHA is established pursuant to Md.Ann. Code art. 44A, § 1–24 (Michie 1982 replacement vol.).

providing lower income families with decent, safe and affordable housing. As with many federal expenditure programs, the Housing Act gives HUD broad authority to condition its provision of funds upon compliance with numerous regulations designed to effectuate the underlying purposes of the Act. *See* 42 U.S.C. §§ 1437c–37d. The regulations most immediately relevant to the present action are the lease requirements and grievance procedures embodied in 24 C.F.R. §§ 866.1–.59 (1982).

Plaintiffs challenge certain standard policies of RHA as violative of HUD regulations, the United States Constitution, and the Maryland landlord tenant statute. As redress for these alleged violations, plaintiffs seek declaratory, injunctive, and, to a limited extent, compensatory relief. Plaintiffs deposed defendant Riley, Executive Director of RHA, and elicited admissions of numerous policies which at first glance do indeed appear to run afoul of the previously mentioned authorities.[2] The Court will review these RHA policies seriatim:

### 1. Maintenance Charges.

According to defendant Riley, RHA policy concerning the assessment of maintenance charges is "the same as it has always been. Anything but wear and tear is the responsibility of the tenant." RHA specifically requires its tenants to pay the repair bills for third party vandalism which the tenant had no responsibility. Should a tenant choose to contest these assessments, RHA officials will discuss the matter informally with him/her but will not inform him/her of any right to formal grievance proceedings. These admitted policies conflict with 24 C.F.R. § 866.4(h)(2), which obligates a local housing authority to repair all damages except for damage "caused by the tenant, tenant's household, or guests," and with 24 C.F.R. § 866.54, which requires written notice of the right to a hearing

should informal attempts at grievance resolution fail.

### 2. Late Fees.

Sometime before January 1, 1982, RHA increased the late fee assessed against delinquent tenant accounts from $5.00 to $10.00. Defendant Riley claims that RHA notified its tenants of this change, but admits that it did not execute written riders to any pre-existing leases. This policy is not in accord with 24 C.F.R. § 866.4(n), which requires that all lease amendments be established exclusively by written rider. In addition, RHA applies a uniform $10.00 late charge to tenants with rent both above and below $200.00, despite the clear requirement of Md.Real Prop.Code Ann. § 8–208(a)(3) (Michie 1981 replacement vol.) that late charges cannot exceed 5% of any rent overdue.

### 3. Evictions for Non Payment: Notice and Hearing.

Defendant Riley has stated that RHA does not notify delinquent tenants of the right to a grievance hearing before commencing state eviction proceedings against them. In addition, RHA does not actually hold grievance hearings before instituting summary ejectment actions. Defendant Riley bases both of these policies upon the assumption that "there is no right to grieve rent." However, defendant Riley's assumption is not in accord with HUD requirements. 24 C.F.R. § 866.4(1)(3) states without qualification that "the notice of termination shall state the reasons for the termination, shall inform the tenant of his right to make such reply as he may wish and of his right to request a hearing in accordance with RHA's grievance procedure." It is true that 24 C.F.R. § 866.55(e) conditions the scheduling of a grievance hearing upon the tenant's placing a certain amount of the disputed rent in escrow, but this procedure obviously cannot be followed if the tenant

---

**2.** The Court, of course, makes no final determination on the merits at this early stage of the litigation.

is not notified of his right to request a hearing in the first place.[3]

### 4. 14 Day Notice Period.

Defendant Riley testified that RHA issues a "14 day notice" to a tenant on "the day we send it to the court." Defendant Riley bases this policy on the presumption that the "inevitable" administrative delay in the Montgomery County Court system will cause the actual eviction to be postponed more than fourteen days after the issuance of the notice. Once again, this policy conflicts with the applicable regulations. 24 C.F.R. § 866.4(1)(2)(i) requires the local housing authority to give 14 days "written notice of the termination of the lease" if the cause of termination is nonpayment of rent. The most straightforward reading of this provision would suggest that a public housing lease is not terminated until the fourteen day period has expired. In addition, basic concepts of property law indicate that RHA may not initiate eviction proceedings until the lease has in fact terminated. See Restatement (Second) of Property (Landlord and Tenant) §§ 12.1 comment n., 14.1 (1977). Interpreting § 866.4(1)(2)(i) to prohibit the commencement of ejectment proceedings before the expiration of the day notice period is buttressed by 24 C.F.R. § 866.58, which places specific limitations upon a local housing authority's ability to commence eviction proceedings in state court when a tenant has invoked the formal grievance procedure. § 866.58 certainly does not contemplate the institution of state eviction proceedings at the commencement of the 14 day period, before the tenant has even been advised of his right to invoke these formal grievance procedures.

Plaintiffs challenge additional policies of defendant besides the four summarized above. In particular, one of RHA former policies has come under attack. Until approximately March, 1982, RHA's maintained the practice of charging a tenant $20.00 in "legal fees" for the commencement of state eviction proceedings, regardless of the actual outcome of the suit. This type of lease provision is expressly forbidden by 24 C.F.R. § 866.6(h) and RHA ceased its practice at HUD's request in March, 1982. Plaintiffs now seek compensatory relief for the tenants who paid these $20.00 charges.

Finally, plaintiffs challenge RHA's admitted policy of applying tenant payments directly to accrued accounts receivable, with only the surplus going to current rent. If, for example, a tenant had an unpaid maintenance charge of $60.00, his tender of the current rent would be applied first to satisfy the maintenance charge, leaving the tenant $60.00 delinquent in rent. While this policy routinely enmeshes tenants in recurrent eviction proceedings, the court has difficulty in ascertaining anything illegal about the practice. Plaintiffs of course will have further opportunity to demonstrate exactly what, if any, law(s) this policy violates.

Depositions were taken of the representative plaintiffs as well as of defendant Riley. Plaintiff Furtick demonstrated no comprehension, even in laymen's terms, of what a class proceeding was all about. As defense counsel suggests, plaintiff Furtick's main concerns appeared to be harassment from other tenants and mildew on one of her walls. Similarly, plaintiff Hawkins "really ... didn't want to have anything to do with" the suit and says that "all I want is to get it over with." On the other hand, plaintiff Twyman appeared enthusiastic in maintaining the suit and exhibited a ready understanding of what a class action entailed. Believing that defendant Riley has been following many potentially illegal policies on an authority-wide basis, plaintiff Twyman stated that she would be a "good representative" because:

I think most of the complaints is concerning the same items. And I can, you know, predict my concerns about it, and as I say, the cases combine into almost

---

**3.** Plaintiffs also challenge the RHA's notice and hearing policies as violative of the Fourteenth Amendment of the United States Constitution.

See *Swann v. Gastonia Housing Authority,* 675 F.2d 1342 (4th Cir.1982) (Winter, C.J.).

the same thing and show if so many cases are just about the same, then the judge or whomever it is will have to listen. Plaintiff Twyman regularly attends monthly meetings of RHA tenants and was recently elected Treasurer of a newly formed tenant's organization.

The record also reveals that each of the representatives plaintiffs have had previous individual disputes with the defendants over the application of the policies in question. Plaintiff Twyman has never had a $20.00 legal charge assessed against her, but has had prior difficulties with RHA in all of the previously mentioned areas. Similarly, plaintiff Hawkins has never had a late fee assessed against her which exceeded 5% of her delinquent rent, but has had conflicts in all other areas. On the other hand, plaintiff Furtick's sole prior complaint with RHA appears to be a dispute over the notice and hearing she received during an attempted termination of her tenancy in January, 1982.

RHA has taken recent steps to moot many of these prior grievances. For example, plaintiff Twyman's complaints have been submitted to grievance proceedings. The Court has yet to be notified of any results from plaintiff Twyman's ongoing grievance proceedings.

### OVERVIEW OF CLASS ACTION STANDARDS

Plaintiffs seek to certify a class of "all Rockville Housing Authority tenants residing therein as of January 1, 1982, or thereafter who have been, are or will be subjected to illegal policies, practices and procedures [of RHA]." Plaintiffs assert that a class action is properly maintainable under Fed.R.Civ.P. 23(b)(2), which provides that a class action is maintainable if:

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

All of the parties recognize that a 23(b)(2) class action may be maintained only if the four prerequisites of Fed.R.Civ.P. 23(a) exist:

(a) PREREQUISITES TO CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the United States Court of Appeals for the Fourth Circuit has enumerated the additional prerequisite that "the district court must determine whether a class exists and if so what it includes." *Roman v. ESB, Inc.,* 550 F.2d 1343, 1348 (4th Cir.1976) (en banc). The Court will address each of these requirements below. Initially, however, the Court must resolve the case or controversy problems presented by the Supreme Court's recent decision in *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).

### STANDING FOR INJUNCTIVE OR DECLARATORY RELIEF

*Lyons* held that a Los Angeles resident who had been subjected to a chokehold when stopped for a traffic violation by the Los Angeles police did not have standing to seek prospective injunctive relief[4] against the City's use of chokeholds in similar situations in the future. As Justice Marshall made plain in a lengthy dissent, *Lyons* establishes the principle that a plaintiff must separately establish standing for each specific form of relief sought. *Lyons,* —— U.S. at —— – ——, 103 S.Ct. at 1675–80 (Marshall, J., dissenting). To establish standing

**4.** The *Lyons* court did not have to pass on the standing requirements for prospective declaratory relief. However, one of the precedents heavily relied upon by Justice White promulgated similar standing rules for declaratory relief. *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Given the prospective nature of both declaratory and injunctive relief, it stands to reason the *Lyons* fully applies to declaratory judgment actions.

for prospective relief, a plaintiff may not rely solely on the claim that he has suffered the alleged injury in the past. *Lyons,* —— U.S. at ——, 103 S.Ct. at 1665. Instead, the plaintiff must establish a "real and immediate threat" that he will suffer future injury from the challenged conduct. *Id.* at —— —— ——, 103 S.Ct. at 1665–66. In the particular circumstances of the *Lyons* case, Justice White stated that:

> [In order to establish an actual controversy in this case] Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police-officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered an authorized police officers to act in such manner.

*Id.* at ——, 103 S.Ct. at 1667.

■ After careful consideration, the Court concludes that plaintiffs in the present case have demonstrated a "real and immediate threat of future injuries." The putative plaintiffs are indigent residents of the 150 public housing units administered by RHA. As defendant Riley stated in her deposition, a number of these units sufficient to create a list two pages long are the subject of eviction proceedings each month. Given the tenuous financial circumstances lower income Americans face, it is hardly surprising that such a high percentage of the tenants face eviction each month. In response to the recurring cash flow problems of their tenants, RHA has established continuing express policies which appear to vary from the applicable legal standards. If RHA policies do in fact violate the law, then the omnipresent financial problems of RHA tenants create a "real and immediate threat" that each tenant will be injured by those illegal policies in the future.[5] The Court holds that a class of RHA tenants

would have standing to seek prospective declaratory and injunctive relief.

## CLASS DEFINITION

The question of class definition "is a question of fact that will be determined on the circumstances of each case." *Roman,* 550 F.2d at 1348. The main concern is "adequately delineated" so that "at the time of judgment the individual members of the class will be readily identifiable." *Hammond v. Powell,* 462 F.2d 1053, 1055 (4th Cir.1972). *See generally,* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 (1972). These requirements seem easily met in the present case, as RHA records can certainly be used to identify those people who have occupied the RHA units since January 1, 1982.

## NUMEROSITY

The parties agree that RHA has 150 units, and that approximately 25 of these units have turned over since January 1, 1982. As the Court has previously observed:

> Although joinder of these persons would be theoretically possible, it has been frequently held that impossibility of joinder is not required to meet this section of the rule. *See, e.g., Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333 (S.D.Ohio 1976); *Jenson v. Continental Financing Corp.,* 404 F.Supp. 806 (D.Minn.1975). Rather difficulty or impracticability of joinder is sufficient.

*Smith v. Baltimore & Ohio Railroad Co.,* 473 F.Supp. 572, 580–81 (D.Md.1979). Many courts have found that approximately 150 members satisfies the numerosity requirement, *see, e.g., Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721 (5th Cir.1976) (110–130 members); *Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420 (2nd Cir.1975) (117 members), and the Court perceives no reason to depart from this practice here.

---

**5.** An identical analysis exists with respect to the RHA maintenance fee policy. A tenant in any apartment will, sooner or later, have de-

fects in his apartment which are not the fault of the tenant, his household, or his guests.

## COMMONALITY

 Common questions of law and fact plainly exist for the declaratory and injunctive relief plaintiffs seek. The standard RHA policies for recurrent landlord-tenant problems present common questions of fact; the legality of those policies create common questions of law. *See Aguirac v. Bustos,* 89 F.R.D. 645 (D.N.M.1981) (farm workers challenging standard practices of growers).

Defendants attempt to itemize the disparate disputes each of the named plaintiffs have had in the past with RHA, apparently on the premise that a named plaintiff may only seek classwide injunctive relief against a practice if that named plaintiff has specifically suffered injury from that practice in the past. The Court is not aware of such limitations. Once the standing requirements of *Lyons* are met, the presence or absence of prior similar harm simply constitutes a factor to consider in determining whether plaintiffs will suffer the irreparable harm necessary to deprive them of an adequate remedy of law. *See* 11 C. Wright & A. Miller, *supra,* § 2948 at 437 (in assessing the existence of irreparable harm for issuance of a preliminary injunction, "the injury need not have been inflicted when application is made"). In short, there is no *per se* requirement that either the representative plaintiffs or members of the represented class have suffered past injury in order to make prospective relief available.

Defendants' contentions about the disparate nature of the prior injuries suffered by the representative plaintiffs have more force on the issue of compensatory relief. For standing to exist for compensatory relief, at least one of the named plaintiffs must have suffered each of the injuries asserted on behalf of the class. *See generally,* C. Wright & A. Miller, *supra,* § 1766, at 240 (1982 supp.). However, it is not at all clear that each of the named plaintiffs need have incurred all of the various injuries suffered by the alleged class. As compensatory relief is by plaintiffs' admission an ancillary, relatively minor aspect of their claim, and as the parties have not focused their efforts upon any distinctions between injunctive and compensatory relief, the Court need not resolve these issues at this time. Questions such as the propriety of sub classes for compensatory relief under Fed.R.Civ.P. 23(c)(4) are better addressed in the context of a motion for partial decertification once the action has matured and a fuller record exists.

## TYPICALITY

The Court has previously reviewed the typicality requirement at some length:

> The "typicality" requirement focuses on the consideration of whether the representative's interests are truly aligned and consistent with those of the class members. Factual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class, and is based on the same legal theory. *See* 7 Wright & Miller, *supra,* § 1764, at 610–14. For example, it has been held that the typicality requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members, *see, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and even though there is a disparity between the damages claimed by the representative and those claimed by the other members of the class. *See, e.g., Simon v. Westinghouse Elec., Inc.,* 73 F.R.D. 480 (W.D.Pa.1977); *Robertson v. NBA,* 389 F.Supp. 867 (S.D.N.Y.1975). Thus, the existence of a unique defense—as here— does not make a named plaintiff's claim atypical.

*Smith,* 473 F.Supp. at 581. Professors Wright and Miller elaborate:

> To the extent that "co-extensive" might suggest that the representatives' claims must be substantially identical to those of the absent class members, it is too demanding a standard. Quite properly, a number of courts have taken a more permissive approach to Rule 23(a)(3).
>
> Plaintiff has satisfied Rule 23(a)(3) if the claims or defenses of the representatives and the members of the class stem

from a single event or are based on the same legal or remedial theory. On the other hand, Rule 23(a)(3) may be used to screen out class actions when the legal or factual position of the representatives is markedly different from that of other members, even though common issues of law or fact are raised.

When the claims or defenses of the representatives and the class members stem from a single event, the standard under subdivision (a)(3) is closely related to the test for the common question prerequisite in subdivision (a)(2).

C. Wright and A. Miller, *supra,* § 1764, at 209 (1982 supp.). Under these standards, the named plaintiff's status as tenants of RHA renders their claims for declaratory and injunctive relief typical of the purported claims of the underlying class. Each and every RHA tenant has a similar interest in curing those allegedly illegal RHA practices which will likely impinge upon his rights in the future. The typicality of the representative plaintiffs' claims for compensatory relief may present more problems, but the Court again prefers to defer this ancillary aspect of the case until a fuller record has developed and counsel have expressly addressed the issue. The Court notes for the present that other courts, without distinguishing between prospective and retrospective relief, have certified plaintiff classes challenging the policies of public housing authorities. *See, e.g., Ponce v. Housing Authority of County of Tulane,* 389 F.Supp. 635, 654–56 (E.D.Cal.1975); *cf. Swann v. Gastonia Housing Authority,* 675 F.2d at 1343 (reviewing class action suit without commenting on propriety of class status); *Escalera v. New York City Housing Authority,* 425 F.2d 853, 867 (2nd Cir. 1973) (holding that commonality requirement was satisfied).

## ADEQUACY OF REPRESENTATION

■ The Court has previously commented on the "adequacy of representation" requirement:

The "fairness and adequacy of representation" requirement of 23(a)(4) goes to the legal capacity of the plaintiff's counsel to represent the class as well as to the ability of the representative himself to pursue a course of conduct beneficial to the absent class members. In determining whether an aspiring representative or, as in this case, a group of representatives meets this standard, courts have found several factors to be significant. First, most courts have found that the representative must have interests sufficiently identical to those of the absent class members so that he will vigorously prosecute the suit on their behalf. *See* 1 H. Newberg, *supra,* § 1120. Further, some courts have stated that the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation. *See, e.g., Amos v. Board of Directors of Milwaukee,* 408 F.Supp. 765, 774–75 (E.D.Wis.), *aff'd,* 539 F.2d 625 (7th Cir.1976); 7 Wright & Miller, *supra,* § 1766. Finally, some courts have required a showing that the representatives have interests which are not antagonistic or in conflict with the objective of those he purports to represent. *See, e.g., Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir.1973); *Feliciano v. Romney,* 363 F.Supp. 656 (S.D.N.Y.1973).

*Smith v. Baltimore & Ohio Railroad,* 473 F.Supp. at 581. In addition, the representative party must have the basic capacity and desire to represent the interest of his class "vigorously." *See, e.g., Cobb v. Avon Products,* 71 F.R.D. 652, 654 (W.D.Pa.1976). *See generally* C. Wright & A. Miller, *supra,* § 1766, at 633. As one court has elaborated,

In my view, facts regarding the personal qualities of the representatives themselves are relevant, indeed necessary, in determining whether "the representative parties will fairly and adequately protect the interests of the class." F.R.Civ.P. 23(a)(4). Because absent members of the class would be conclusively bound by the results obtained by these representatives and their attorneys, due process requires that they be more than pro forma representatives. *Cf. Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

The class is entitled to more than blind reliance upon even competent counsel by uninterested and inexperienced representatives. A proper representative can offer more to the prosecution of a class action than mere fulfillment of the procedural requirements of Rule 23. He can, for example, offer his personal knowledge of the factual circumstances, and aid in rendering decisions on practical and non-legal problems which arise during the course of litigation.

*In Re Goldchip Funding Co.,* 61 F.R.D. 592, 594 (M.D.Pa.1974).

In the present case, most of these factors are easily met. For reasons discussed previously, a substantial identity of interests exists between named plaintiffs and the underlying class. Similarly, all counsel in the present action have produced prompt, thorough and professional work. Furthermore, no conflicts of interest are apparent at the present between the representative parties and the underlying class.

█ The "vigorous prosecution" requirement raises significantly more problems. Plaintiff Hawkins clearly does not possess the desire to pursue the class action vigorously; her chief desire is "to get the whole thing over with." After carefully reading plaintiff Furtick's deposition several times, the Court cannot help but conclude that she fails to possess even the most rudimentary notion of what her representative status would require. On the other hand, plaintiff Twyman appears to be an adequate representative party. She demonstrated a full understanding of what a class action entails and, as demonstrated by her attendance at tenants' meetings and her position of leadership in the newly formed tenants' organization, has a clear desire to attempt to improve the lot of all RHA tenants. Plaintiff Twyman's deposition does reveal that she does not completely understand all of the legal claims being brought on behalf of the class. However, the applicable law in this area is, in an understatement, intricate and complex, and the Court will not apply a hypertechnical knowledge requirement. As Judge Lasker recently commented,

while [the class representatives] at their depositions demonstrated a somewhat limited understanding of the details of this litigation, there is no requirement under Rule 23 that the named plaintiffs be able to understand the intricacies of the litigation or their role in it, *see Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 372–73, 86 S.Ct. 845, 850–51, 15 L.Ed.2d 807 (1966); *Wellman v. Dickinson,* 79 F.R.D. 341, 347 (S.D.N.Y.1978). Where, as here, the named plaintiffs contacted their attorneys seeking relief from a specific practice, they expressed the desire to see that the wrong allegedly done to them is not done to others, they have claims which are common to the claims of the rest of the class, no apparent conflict exists, and their counsel have diligently and competently urged the interests of the class, the requirement that the named plaintiffs adequately represent the class is satisfied despite their lack of sophistication in legal or financial matters. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir.1968).

*Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1190 (S.D.N.Y.1982). The Court therefore holds that plaintiff Twyman is an adequate representative but that plaintiffs Furtick and Hawkins are not. Consequently, the case shall proceed with only plaintiff Twyman as representative plaintiff.

█ This holding has at least one clear ramification. The Court initially notes that a single representative plaintiff can adequately represent a class if that plaintiff is vigorous and capable representative. *See generally* C. Wright & A. Miller, *supra,* § 1766 ("quality not quantity is significant"). However, the narrowing of representative parties may affect the compensatory relief sought. As previously mentioned, the representative party must have individual standing in order to assert a particular claim on behalf of the class. *See generally* 7 C. Wright & A. Miller, *supra,* § 1766, at 240–47 (1982 supp.). The record indicates that plaintiff Twyman alleges prior injury under most of the practices dis-

cussed earlier, but fails to assert that she personally had a $20.00 legal fee assessed against her. If this be the case, then plaintiff Twyman may not seek damages on behalf of the class for the legal fee overcharge. Plaintiff Twyman has twenty days from the date of this ruling to allege that she in fact did incur a $20.00 overcharge or, alternatively, to add an additional representative plaintiff who was charged a $20.00 legal fee. Any additional representative plaintiff must of course satisfy the "adequacy" standards of Fed.R.Civ.P. 23(a)(4).[6]

## RULE 23(b)(2) STANDARDS

■ Having surmounted the prerequisites of Fed.R.Civ.P. 23(a), the present action is clearly maintainable under Fed.R.Civ.P. 23(b)(2). The only possible argument defendants can make against the present actions's (b)(2) status is that plaintiffs seek compensatory as well as declaratory and injunctive relief. For reasons which fully apply to the present action, the Court has squarely rejected a similar contention previously:

> Because of the request for monetary relief, the defendants have argued that 23(b)(2) is not applicable, confining it to suits for injunctive and declaratory relief. This argument is unpersuasive. The Advisory Committee Note to Rule 23 states that the (b)(2) designation is not appropriate where the "final relief relates *exclusively or predominantly* to money damages." *See* Advisory's Comm. Note, 39 F.R.D. 98, 102 (1966) (emphasis added). However, where, as here, the monetary relief is one element of the equitable remedy, and is simply ancillary to the injunctive or declaratory relief sought as the

primary purpose of the suit, it will not prevent (b)(2) treatment. *See Robinson v. Lorillard Corp.*, 444 F.2d 791, 801–02 (4th Cir.1971), *cert. dismissed*, 404 U.S. 1006, 1007 [92 S.Ct. 573, 30 L.Ed.2d 665] (1972); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711, 720 (7th Cir.1969). *See generally*, 7A Wright & Miller, *supra*, § 1775, at 22–23.

*Smith v. Baltimore & Ohio Railroad*, 473 F.Supp. at 582.

## MOOTNESS

Defendants also urge that RHA has mooted most of the named plaintiffs' claims of prior injury. This contention has no relevance to the claims for prospective, declaratory or injunctive relief. Cessation of the classwide policies is the sole appropriate manner to moot these prospective claims. *See Kremens v. Bartley*, 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977).

■ Mooting of the claimed prior injuries of the representative plaintiffs before class certification will moot the entire class action for compensatory relief. *See, e.g., Bradley v. Housing Authority of Kansas City*, 512 F.2d 626 (8th Cir.1975). However, defendant proffers no contentions at the present time that plaintiff Twyman's claims of prior injury have in fact been mooted. Defendant has claimed that some of plaintiff Twyman's claims have been submitted to RHA's grievance procedure, but defendant has not yet informed the Court that the grievance procedure has concluded in a manner that would actually moot the claims. The Court therefore certifies plaintiff Twyman as class representative for compensatory as well as injunctive relief, excluding the $20.00 legal charge issue discussed previously.[7] The Court notes that

---

**6.** The Court notes the conflicting comments of counsel on plaintiff Twyman's income eligibility for Legal Aid Services. In the absence of competent evidence to the contrary, the Court will assume that the Legal Aid Bureau is complying with whatever mandatory requirements it must adhere to. The Court has no knowledge of what income guidelines exist or, if any do exist, the extent to which those guidelines are mandatory. The Court does not consider the present action to be a proper forum for the

litigation of these charges and will ignore defendants' assertions until presented with a final decision of an authoritative third party tribunal.

**7.** Subsequent to the drafting of this Opinion, the Court received notice that plaintiff Twyman had moved from the RHA. This move presents a new issue about the continued adequacy of her representation under Fed.R.Civ.P. 23(a)(4). If defendants wish to pursue this issue, they

any subsequent mooting of her individual compensatory claims is largely irrelevant under *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (mooting of individual claim after class certification does not moot class claim).

For the foregoing reasons, it is this 27th day of September, 1983, by the United States District Court for the District of Maryland, ORDERED:

1. That plaintiffs' motion for class certification BE, and the same IS, hereby DENIED as to the claims relating to defendants' previous legal charge;

2. That plaintiffs' motion for class certification BE, and the same IS, hereby GRANTED as to all other claims;

3. That plaintiffs Furtick and Hawkins be disqualified as class representatives;

4. That plaintiff Twyman has twenty (20) days in which to make appropriate amendments or add additional class representatives as outlined in the Opinion; and

5. That a copy of this Memorandum and Order be mailed to the parties.

should file a motion for decertification within thirty (30) days of the date of this Opinion. Plaintiffs will have fourteen (14) days to respond and defendants will then have ten (10) days additional to reply. The Court suggests that counsel explore analogies in the area of employment discrimination where a discharged employee seeks to represent current employees. This recent change does not modify the resolution of the substantive issues discussed herein.