968

Jesus RAMIREZ; Arturo Garcia; Guillermina Garcia; Jose Garcia; Arturo Garcia, Jr.; Juan Rodriguez; Jose Jimenez; Raul Ramos; Jesus Mendoza; Tomas Valentin; Gregoria Guerrero; Zenaida Quinones; Janet Quinones; Awilda Quinones; Nelson Santiago; Cynthia McCleary; Martin Ramos; Domingo Coriano; Benedicto Padron; Timothy Ponce; Juan Guerrero, Jose Guerrero, Maria Guerrero, and Margarita Guerrero by their next friend, Gregoria Guerrero; Norma Garcia, Lupita Garcia, and Enedina Garcia by their next friend, Arturo Garcia; and Jose Angel Garza by his next friend Gregoria Guerrero; individually and on behalf of all others similarly situated, Alfredo Solis; Joe Manuel Solis by his next friend Alfredo Solis; Alvaro Aguilar and Nancy Aguilar, Plaintiffs,

v.

Jack E. WEBB and Gregory Kowalski, both individually and in their official capacity as agents of the Immigration and Naturalization Service; Paul E. McKinnon, both individually and in his official capacity as District Director of the Immigration and Naturalization Service; Jerald D. Jondall, both individually and in his official capacity as District Director of the United States Border Patrol; Ronald Dowdy and Edwin W. Earl, both individually and in their official capacity as agents of the United States Border Patrol; John Doe I through XXXXIV, both individually and in their official capacity as agents of the Immigration and Naturalization Service of the United States Border Patrol; Unknown Local Law Enforcement Agencies; Ronald Roe I and II, both individually and in their official capacity as agents of Unknown Local Law Enforcement Agencies, Defendants.

No. K 81–344.

United States District Court,
W.D. Michigan, S.D.

Aug. 14, 1984.

individuals associated with the Immigration and Naturalization Service (INS) and the United States Border Patrol (USBP). The Plaintiffs are citizens, legal residents, or otherwise legally present individuals of Mexican and Hispanic appearance, who allegedly were subjected to illegal searches, seizures, stops, interrogations, or imprisonments during their presence in western Michigan. The specific acts from which the Plaintiffs infer a class wide harm include automobile stops, warrantless nighttime household searches characterized by Plaintiffs as "raids", applications of handcuffs and chokeholds on United States citizens who do not carry identification papers, and various other unreasonable acts. The Plaintiffs claim these specific past actions were part of a continuing policy implemented by the INS and USBP in violation of the Plaintiffs' rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Primarily, the Plaintiffs seek injunctive and declaratory relief against further violations directed at the entire class of Mexican and Hispanic appearing individuals in western Michigan. Additionally, Plaintiffs seek money damages for the specific past acts by the INS and USBP against the named Plaintiffs.

By their present motion, Plaintiffs seek to have certified a class consisting of all persons of Mexican or Hispanic origin or appearance who have been, are, or will be living, working, traveling or visiting within the Western Federal Judicial District of Michigan.

Michigan Migrant Legal Assistance Project, Inc. by Ronald G. Kirschenheiter, Grand Rapids, Mich., for plaintiffs; Michigan Migrant Legal Assistance Project, Inc. by Vincent H. Beckman, Scott Stensaas, Berrien Springs, Mich., Edward F. Preston, East Lansing, Mich., of counsel.

John A. Smietanka, U.S. Atty., Anne VanderMale Tuuk, Asst. U.S. Atty., Grand Rapids, Mich., Francesco Isgro, I.N.S., Washington, D.C., for federal defendants; Elizabeth Hacker, Chief Legal Officer, I.N.S., Detroit, Mich., of counsel.

## OPINION

ENSLEN, District Judge.

This lawsuit was brought by more than 30 named Plaintiffs against officials and

■ In applying for class certification, the moving party bears the burden of proof. *Senter v. General Motors Corporation*, 532 F.2d 511 (CA 6 1976), *cert. den.*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150. The movant must illustrate the applicability of the threshhold requirements of Rule 23(a), specify the type of class under 23(b)(1), (2) or (3), and address the notice issue, if applicable, under Rule 23(c). *Shipp v. Memphis Area Office, Tennessee Department of Employment*, 581 F.2d 1167

(CA 6 1978), *cert. den.*, 440 U.S. 980, 99 S.Ct. 1788, 60 L.Ed.2d 240.

■ Additionally, there are the obvious, non-codified requirements that the movant must show that he or she is part of the class and possesses the same interest and suffers the same injury as the other class members. *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 2373, 72 L.Ed.2d 740, 749 (1982), quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453. Finally, numerous prior judicial rulings instruct the Court to consider intangible aspects of proposed class actions and determine whether the class action form is the most economical and appropriate. *E.g., General Telephone, supra.*

■ Clearly, Plaintiffs satisfy the threshold requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representative capability.

In regard to the numerosity prerequisite, the class is, if it is anything, large enough to necessitate class formation. Ignoring seasonal variations and normal demographic fluidity, the class in this case contains approximately 50,000 members, including many thousands of migrant farm workers. There have been much larger classes, *Johnson v. City of Baton Rouge, Louisiana*, 50 F.R.D. 295 (ED La.1970), and much smaller classes, *Swanson v. American Consumer Industries*, 415 F.2d 1326 (CA 7 1969). Where the relief sought is declaratory in nature, and a reasonably large number has been set, the numerosity prerequisite is satisfied, even if a specific enumeration is not possible. *Northcross v. Board of Education of City of Memphis*, 302 F.2d 818 (CA 6 1962), *cert. den.*, 370 U.S. 944, 82 S.Ct. 1586, 8 L.Ed.2d 810; Advisory Committee Note to the 1966 Amendment of Rule 23, 39 F.R.D. 98, 102.

In regard to the commonality prerequisite of Rule 23(a), the proposed class members appear to have suitably common factual and legal interests. Class-wide injunctive or declaratory relief from unconstitutional search and seizure is sought. The alleged Fourth Amendment violations were committed at the behest of two common Defendants and their agents, who were allegedly carrying out a single common policy in cooperation with each other. The policy extends to different settings—work, home, and travel—in which all the class members find themselves at various times.

Defendants assert without case citation or statistical support that the class lacks suitable homegeneity because "the vast majority of the members of the putative class have never been the subject of an INS investigation and do not view the possibility as a matter of paramount concern" (Defendants' brief at page 4). Regardless of whether Defendants have reliable knowledge of the paramount concerns of the Mexican and Hispanic appearing population in this district, denial of class certification will not necessarily follow from the lack of exposure of each member of the class to the threatened injury. Nor is the Plaintiffs' class description overly broad, or too vague to suffice. Class certification was granted to a class described as "all persons of Mexican descent and all Spanish surnamed persons in Illinois" in *Illinois Migrant Council v. Pilliod*, 540 F.2d 1062, 1072 (CA 7 1976). The *Pilliod* plaintiffs, like the Plaintiffs in this case, sought injunctive relief from INS search and seizure practices.

In general, the Sixth Circuit has held that there need not be a perfect identity of fact and law in each class members' case; there merely must be a common element of fact and law. *Senter, supra*, at 525. In this case, Plaintiffs allege generally, and illustrate by specific example that many or all class members suffer actual or threatened harm caused by a single policy implemented by a finite group of agents under INS and USBP central control. That allegation falls well within the parameters of *Senter* and other authoritative case law.

The "commonality" requirement often merges with the "typicality" requirement. *General Telephone Company of Southwest v. Falcon, supra*, 102 S.Ct. at 2371 n.

13. The typicality prerequisite of Rule 23(a) has been construed to require that the relief sought will benefit all class members and that no individual claim within the class be so unique as to impair the necessary alignment of interests. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Again, identicality is not required, *Senter, supra,* and a general course of conduct by the opposing party which affects the entire class to a same or similar degree, will substantiate the appropriateness of class action status. *Kaufman v. Lawrence,* 76 F.R.D. 397 (SD NY 1977). In this case it is precisely the allegation of the Plaintiffs that a single repetitive practice harms the class in various environmental settings. That is, at home and at work and during travel, the INS and USBP subject Mexican and Hispanic appearing individuals to unreasonable search and seizure.

The final prerequisite of Rule 23(a), the requirement of adequacy of representation, is also satisfied by Plaintiffs and counsel. The test for this prerequisite was set by *Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239 (CA 3 1975) *cert. den.,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679. The *Wetzel* test requires (a) experienced, qualified lawyers and (b) named plaintiffs who have no conflict with members of the larger class. *Id.* at 247. The discussion above should serve to dispose of the latter requirement. Counsel on its own behalf attests that it has suitable staff and ability, and the Court has noted counsel's capabilities in past cases within this judicial district.

Having satisfied the Rule 23(a) requirements, there remains the last technical task of inquiring whether the lawsuit is a type maintainable under Rule 23(b). Plaintiffs assert their action correctly falls within the 23(b)(2) type:

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The (b)(2) subsection would seem appropriate on its face to this case. As noted in the Advisory Committee Notes to the 1966 Amendments to Rule 23, the (b)(2) subsection is appropriate in a lawsuit "even if [the injury] has taken affect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." 39 F.R.D. at 102. Thus the last technical prerequisite is satisfied.

The Court should note two tangent issues. The fact that the named Plaintiffs seek monetary damages for their alleged personal damages does not automatically fall outside the permissible scope of subsection (b)(2), because the relief sought by the Plaintiffs does not relate "exclusively or predominently to money damages." 39 F.R.D. at 102. *Twyman v. Rockville Housing Authority,* 99 F.R.D. 314, 324 (1983), citing the rule of *Robinson v. Lorillard,* 444 F.2d 791, 801–802 (CA 4 1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972). A second tangent issue concerns notice to non-participatory class members. Notice is not a requirement under Rule 23(b)(2) and is within the discretion of the Court. *Laskey v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW),* 638 F.2d 954 (CA 6 1981).

Finally, as mentioned above, when all the technical rules of procedure have been satisfied there remains for the Court's reflection certain intangible aspects of the class action issue. Normally, as alluded to by the court in *General Telephone, supra,* those considerations revolve around policy matters such as judicial economy and appropriateness. *General Telephone* and other cases in that general vein imply that the courts may restrict implementation of Rule 23 in cases close to the margin of suitability. *Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed. 184 (1977).

In this case, however, where the Fourth Amendment rights of Mexican and Hispanic appearing persons are at stake, I will note that we are at the opposite margin.

That is, this case and similar cases have become even more appropriately certifiable as class actions in the wake of the recent United States Supreme Court holding in *Immigration and Naturalization Service v. Adan Lopez-Mendoza,* —— U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

In *Lopez-Mendoza,* INS agents with or without permission entered work places, visually scanned workers who were Mexican and Hispanic appearing, and selected for questioning those workers who "averted their heads, avoided eye contact, or tried to hide themselves in a group." *Id.* at ——, 104 S.Ct. at 3483. Employing that constitutionally defective standard of probable cause, agents interrogated and/or arrested various of the workers. Admissions elicited from the workers were introduced in subsequent deportation hearings. Justice O'Connor, reviewing the constitutionality of the tainted evidence, established the premise that the exclusionary rule does not apply in an INS civil deportation hearing. Justice O'Connor reached that conclusion because the INS is ostensibly self-regulating in regard to searches, seizures and arrests, and because INS agents know that it is highly unlikely that any arrestee will challenge the lawfulness of an arrest; therefore the deterrent effect of the exclusionary rule is nullified. *Id.* at ——, 104 S.Ct at 3486.

I do not question either the logic or the holding of *Lopez-Mendoza.* I do note, in a general sense, that because the average INS field agent will not "shape his conduct in anticipation of the exclusion of evidence at a final deportation hearing," *Id* at ——, 104 S.Ct. at 3487, and because "The exclusionary rule provides no remedy for completed wrongs," *Id.* at ——, 104 S.Ct. at 3488, and because "the possibility of declaratory relief against the agency thus offers a means for challenging the validity of INS practices ..." *Id.* at ——, 104 S.Ct. at 3488, the lower federal courts apparently now have a duty to respond with a significantly higher degree of care to requests for forward looking constitutional protection in such cases.

The lower courts must now recognize that duty to carefully consider the declaratory remedy in light of the fact that it may be the only practical means of protecting certain classes of United States citizens, residents, and visitors, whose Fourth Amendment rights allegedly are in jeopardy.

The Court's decision rests on the inquiry into the technical applicability of Rule 23(a) and Rule 23(b)(2). Those prerequisites are satisfied and, accordingly, the Plaintiffs' Motion for Class Certification is granted.