SUROWITZ *v.* HILTON HOTELS CORP. ET AL.

No. 161.   Argued January 20, 1966.—Decided March 7, 1966.

*Richard F. Watt* argued the cause for petitioner. With him on the brief were *Sidney M. Davis, Walter J. Rockler* and *Lionel G. Gross.*

*Samuel W. Block* argued the cause for respondents. On the brief for Hilton Hotels Corp. were *Leslie Hodson, Don H. Reuben* and *Lawrence Gunnels.* With *Mr. Block* on the brief for the individual respondents were *Albert E. Jenner, Jr., Keith F. Bode, William J. Friedman* and *Stanley R. Zax.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner, Dora Surowitz, a stockholder in Hilton Hotels Corporation, brought this action in a United States District Court on behalf of herself and other stockholders charging that the officers and directors of the corporation had defrauded it of several million dollars by illegal devices and schemes designed to cheat the corporation and enrich the individual defendants. The acts charged, if true, would constitute frauds of the grossest kind against the corporation, and would be in violation of the Securities Act of 1933,[1] the Securities Exchange Act of 1934,[2] and the Delaware General Corporation Law.[3] Summarily stated, the detailed complaint, which takes up over 60 printed pages, charges first that defendants conceived and carried out a deceptive plan under which the Hilton Hotels Corporation through a formal "offer" mailed to all the stockholders, purchased from them some 300,000 shares of its outstanding com-

---

[1] 48 Stat. 74, as amended, 15 U. S. C. § 77a *et seq.* (1964 ed.).

[2] 48 Stat. 881, as amended, 15 U. S. C. § 78a *et seq.* (1964 ed.).

[3] Del. Code Ann. Tit. 8, § 101 *et seq.* (1953 ed.).

mon stock, that these defendants manipulated the stock's market price to an artificially high level and then at this inflated price sold some 100,000 shares of their own stock to the corporation, and that the effect of this offer and purchase was to reduce the corporation's working capital more than $8,000,000 at a time when its financial condition was weak, and the funds were badly needed to run the corporation's business. The second deceptive scheme charged in the complaint was that the same defendants, all of whom were stockholders of the Hilton Credit Corporation, caused the Hilton Hotels Corporation to purchase, also at an artificially high price, more than a million shares of Hilton Credit Corporation stock, paying about $3,441,000 for it, of which over $2,000,000 was personally received by the defendants. The complaint was signed by counsel for Mrs. Surowitz in compliance with Rule 11 of the Federal Rules of Civil Procedure which provides that "The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." Also pursuant to Rule 23 (b) of the Federal Rules, the complaint was verified by Mrs. Surowitz, the petitioner, who stated that some of the allegations in the complaint were true and that she "on information and belief" thought that all the other allegations were true.

So far as the language of the complaint and of Mrs. Surowitz's verification was concerned, both were in strict compliance with the provisions of Rule 23 (b) which states that a shareholder's complaint in a secondary action must contain certain averments and be verified by the plaintiff.[4] Notwithstanding the sufficiency

[4] "(b) *Secondary Action by Shareholders.* In an action brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the asso-

of the complaint and verification under Rule 23 (b), however, the court, without requiring defendants to file an answer and over petitioner's protest, granted defendants' motion to require Mrs. Surowitz to submit herself to an oral examination by the defendants' counsel. In this examination Mrs. Surowitz showed in her answers to questions that she did not understand the complaint at all, that she could not explain the statements made in the complaint, that she had a very small degree of knowledge as to what the lawsuit was about, that she did not know any of the defendants by name, that she did not know the nature of their alleged misconduct, and in fact that in signing the verification she had merely relied on what her son-in-law had explained to her about the facts in the case. On the basis of this examination, defendants moved to dismiss the complaint, alleging that "1. It is a sham pleading, and 2. Plaintiff, Dora Surowitz, is not a proper party plaintiff . . . ." In response, Mrs. Surowitz's lawyer, in an effort to cure whatever infirmity the court might possibly find in Mrs. Surowitz's verification in light of her deposition, filed two affidavits which shed much additional light on an extensive investigation which had preceded the filing of the complaint. Despite these affidavits the District Judge dismissed the case holding that Mrs. Surowitz's affidavit was "false," that

---

ciation refuses to enforce rights which may properly be asserted by it, the complaint shall be verified by oath and shall aver (1) that the plaintiff was a shareholder at the time of the transaction of which he complains or that his share thereafter devolved on him by operation of law and (2) that the action is not a collusive one to confer on a court of the United States jurisdiction of any action of which it would not otherwise have jurisdiction. The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

being wholly false it was a nullity, that being a nullity it was as though no affidavit had been made in compliance with Rule 23, that being false the affidavit was a "sham" and Rule 23 (b) required that he dismiss her case, and he did so, "with prejudice."

The Court of Appeals affirmed the District Court's dismissal, saying in part:

> "We can only conclude, as did the court below, that plaintiff's verification of the complaint was false because she swore to the verity of alleged facts of which she was wholly ignorant." 342 F. 2d, at 606.

The Court of Appeals reached its conclusion that the case must be dismissed under Rule 23 (b) and Rule 41 (b) despite the fact that the charges made against the defendants were viewed as very serious and grave charges of fraud and that "many of the material allegations of the complaint are obviously true and cannot be refuted." 342 F. 2d, at 607. We cannot agree with either of the courts below and reverse their judgments. We do not find it necessary in reversing, however, to consider all the numerous arguments made by respondents based on the origin, history and utility of Rule 23, and of derivative causes of action and class suits. No matter how much weight we give to the function of the Rule and of class action proceedings in protecting corporate management against so-called "nuisance" or "strike suits," we hold that the Rule cannot justify dismissal of this case on the record shown here.

At the time the District Court dismissed and the Court of Appeals approved, there were pending before those courts not merely the complaint, the verified statements by counsel and by Mrs. Surowitz, and the deposition of Mrs. Surowitz, but, as noted above, two affidavits, one signed by Mrs. Surowitz's attorney in this case, Mr.

Walter J. Rockler, and the other signed by her son-in-law, Mr. Irving Brilliant, had been submitted in response to the defendants' motion that the complaint be dismissed. These affidavits, as well as Mrs. Surowitz's deposition, are a part of the record before us here and we shall now state the facts as they are illuminated by these affidavits.

Mrs. Surowitz, the plaintiff and petitioner here, is a Polish immigrant with a very limited English vocabulary and practically no formal education. For many years she has worked as a seamstress in New York where by reason of frugality she saved enough money to buy some thousands of dollars worth of stocks. She was of course not able to select stocks for herself with any degree of assurance of their value. Under these circumstances she had to receive advice and counsel and quite naturally she went to her son-in-law, Irving Brilliant. Mr. Brilliant had graduated from the Harvard Law School, possessed a master's degree in economics from Columbia University, was a professional investment advisor, and in addition to his degrees and his financial acumen, he wore a Phi Beta Kappa key. In 1957, six years before this litigation began, he bought some stock for his mother-in-law in the Hilton Hotels Corporation, paying a little more than $2,000 of her own money for it. He evidently had confidence in that corporation because by 1960 he had purchased for his wife, his deceased mother's estate, a trust fund created for his children, and Mrs. Surowitz some 2,350 shares of the corporation's common stock, at a cost of about $45,000 in addition to one of the corporation's $10,000 debentures.

About December 1962, Mrs. Surowitz received through the mails a notice from the Hilton Hotels Corporation announcing its plan to purchase a large amount of its own stock. Because she wanted it explained to her, she took the notice to Mr. Brilliant. Apparently disturbed

by it, he straightway set out to make an investigation. Shortly thereafter he went to Chicago, Illinois, where Hilton Hotels has its home office and talked the matter over with Mr. Rockler. Mr. Brilliant and Mr. Rockler had been friends for many years, apparently ever since both of them served as a part of the legal staff representing the United States in the Nuremberg trials. The two decided to investigate further, and for a number of months both pursued whatever avenues of information that were open to them. By August of 1963 on the basis of their investigation, both of them had reached the conclusion that the time had come to do something about the matter. In the meantime the value of the corporation's stock had declined steadily, and in August the corporation failed to pay its usual dividend. In October, while a complaint was being prepared charging defendants with fraud and multiple violations of the federal securities acts and state law, Mr. Rockler met with defendants' lawyers. This conference, instead of producing an understanding, merely provided Mr. Brilliant and Mr. Rockler with information, not previously available to them, which increased their grave suspicions about the corporation's stock purchase and its management. For instance it was learned at this meeting that at the time of the stock purchase the president and chairman of the board of Hilton Hotels Corporation had purchased for an unusually high price over 100,000 shares of the corporation's stock from several trusts established by a vice president and director of the corporation. Finally, in December, or almost exactly one year after the corporation had submitted its questionable offer to purchase stock from its shareholders, this complaint was filed charging the defendants with creating and participating in a fraudulent scheme which had taken millions of dollars out of the corporation's treasury and transferred the money to the defendants' pockets.

Soon after these investigations began Rockler prepared a letter for Mrs. Surowitz to send to the corporation protesting the alleged fraudulent scheme. Mr. Brilliant, her son-in-law, took the communication to Mrs. Surowitz, explained it to her, and she signed it. Later, in August 1963, when the corporation declined to pay its dividend, Mrs. Surowitz, who had purchased the stock for the specific purpose of gaining a source of income, was sufficiently disturbed to seek Mr. Brilliant's counsel. He explained to her that he and Mr. Rockler were of the opinion that the corporation's management had wrongfully damaged the corporation, and together at that time Mrs. Surowitz and her son-in-law discussed the matter of her bringing this suit. When, on the basis of this conversation, Mrs. Surowitz stated that she agreed that suit be filed in her name, Mr. Rockler prepared a formal complaint which he mailed to Mr. Brilliant. Mr. Brilliant then, according to both his affidavit and Mrs. Surowitz's testimony, read and explained the complaint to his mother-in-law before she verified it. Her limited education and her small knowledge about any of the English language, except the most ordinarily used words, probably is sufficient guarantee that the courts below were right in finding that she did not understand any of the legal relationships or comprehend any of the business transactions described in the complaint. She did know, however, that she had put over $2,000 of her hard-earned money into Hilton Hotels stock, that she was not getting her dividends, and that her son-in-law who had looked into the matter thought that something was wrong. She also knew that her son-in-law was qualified to help her and she trusted him. It is difficult to believe that anyone could be shocked or harmed in any way when, in the light of all these circumstances, Mrs. Surowitz verified the complaint, not on the basis of her own knowledge and understanding, but in the faith that her

son-in-law had correctly advised her either that the statements in the complaint were true or to the best of his knowledge he believed them to be true.

We assume it may be possible that there can be circumstances under which a district court could stop all proceedings in a derivative cause of action, relieve the defendants from filing an answer to charges of fraud, and conduct a pre-trial investigation to determine whether the plaintiff had falsely sworn either that the facts alleged in the complaint were true or that he had information which led him to believe they were true. And conceivably such a pre-trial investigation might possibly reveal facts surrounding the verification of the complaint which could justify dismissal of the complaint with prejudice. However, here we need not consider the question of whether, if ever, Federal Rule 23 (b) might call for such summary action. Certainly it cannot justify the court's summary dismissal in this case. Rule 23 (b) was not written in order to bar derivative suits. Unquestionably it was originally adopted and has served since in part as a means to discourage "strike suits" by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them. On the other hand, however, derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves. And it is not easy to conceive of anyone more in need of protection against such schemes than little investors like Mrs. Surowitz.

When the record of this case is reviewed in the light of the purpose of Rule 23 (b)'s verification requirement, there emerges the plain, inescapable fact that this is not a strike suit or anything akin to it. Mrs. Surowitz was

not interested in anything but her own investment made with her own money. Moreover, there is not one iota of evidence that Mr. Brilliant, her son-in-law and counselor, sought to do the corporation any injury in this litigation. In fact his purchases for the benefit of his family of more than $50,000 of securities in the corporation, including a $10,000 debenture, all made years before this suit was brought, manifest confidence in the corporation, not a desire to harm it in any way. The Court of Appeals in affirming the District Court's dismissal, however, indicated that whether Mrs. Surowitz and her counselors acted in good faith and whether the charges they made were truthful were irrelevant once Mrs. Surowitz demonstrated in her oral testimony that she knew nothing about the content of the suit. That court said:

"Those affidavits reveal that substantial and diligent investigation by Brilliant, Rockler and others preceded the filing of this complaint. . . . Neither affidavit, however, does anything, if anything could be done, to offset plaintiff's positive disavowal of any relevant knowledge or information other than the fact of her stock ownership." 342 F. 2d, at 607.

In fact the opinion of the Court of Appeals indicates in several places that a woman like Mrs. Surowitz, who is uneducated generally and illiterate in economic matters, could never under any circumstances be a plaintiff in a derivative suit brought in the federal courts to protect her stock interests.[5]

---

[5] Consider, for example, these three excerpts taken from separate paragraphs in the Court of Appeals' opinion:

"We have considered all arguments advanced by the plaintiff. We have considered the record in the light of plaintiff's limited grasp of the English language and the intricacies of corporate finance. We have considered the peculiar position of a plaintiff in a suit such as this as, principally, the instrument through which the judicial machinery is set in motion. It is not unreasonable to

We cannot construe Rule 23 or any other one of the Federal Rules as compelling courts to summarily dismiss, without any answer or argument at all, cases like this where grave charges of fraud are shown by the record to be based on reasonable beliefs growing out of careful investigation. The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits. Rule 23 (b), like the other civil rules, was written to further, not defeat the ends of justice. The serious fraud charged here,

---

state as a minimum requirement that the plaintiff have general knowledge of the acts of which she complains and the connection of the defendants to those acts which she alleges. We conclude that any lesser requirement would make the verification provision farcical.

.          .          .          .          .

"But if the verification provision of the Rule is to have any real meaning, it requires that a plaintiff must have knowledge of his own position and relationship to the suit, of the official identity of the parties against whom the suit is brought and general knowledge of the wrongful acts which he alleges as a foundation for his complaint.

.          .          .          .          .

"We think the court below correctly held that a pleading governed by Rule 23 (b) is sham when it clearly appears that the ostensible verification is a mere formality without knowledgeable or informative comprehension in the party plaintiff whose verification gives it the breath of life. That breath is not instilled by the reading of words to that plaintiff which she obviously did not understand." 342 F. 2d, at 608, 606, and 607–608.

which of course has not been proven, is clearly in that class of deceitful conduct which the federal securities laws were largely passed to prohibit and protect against. There is, moreover, not one word or one line of actual evidence in this record indicating that there has been any collusive conduct or trickery by those who filed this suit except through intimations and insinuations without any support from anything any witness has said. The dismissal of this case was error. It has now been practically three years since the complaint was filed and as yet none of the defendants have even been compelled to admit or deny the wrongdoings charged. They should be. The cause is reversed and remanded to the District Court for trial on the merits.

*Reversed and remanded.*

MR. JUSTICE FORTAS took no part in the decision of this case.

THE CHIEF JUSTICE took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, concurring.

Rule 23 (b) directs that in a derivative suit "the complaint shall be verified by oath" but nothing dictates that the verification be that of the plaintiff shareholder. See *Bosc* v. *39 Broadway, Inc.,* 80 F. Supp. 825. In the present circumstances, it seems to me the affidavit of Walter J. Rockler, counsel for Mrs. Surowitz, amounts to an adequate verification by counsel, which I think is permitted by a reasonable interpretation of the Rule at least in cases such as this. On this premise, I agree with the decision of the Court.