**Deborah TANZER, Plaintiff,**

**v.**

**Robert H. HUFFINES et al., Defendants.**

**Civ. A. No. 3166.**

United States District Court,
D. Delaware.

July 12, 1972.

Irving Morris, of Cohen, Morris & Rosenthal, Wilmington, Del., Benedict Wolf and Howard L. Jacobs, of Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff.

William J. Kenney, Washington, D. C., for defendant, Edward Krock.

Howard M. Handelman, of Bayard, Brill & Handelman, Wilmington, Del., and Goldstein, Gurfein, Shames & Hyde, New York City, for defendant, Victor Muscat.

Richard F. Balotti, of Richards, Layton & Finger, Wilmington, Del., and William R. Glendon, of Royall, Koegel & Wells, New York City, for defendant, Robert H. Huffines, Jr.

Robert W. Wakefield, of Walker, Miller & Wakefield, Wilmington, Del., and Harold W. Wolfram, of Wolfram & Wolfram, New York City, for defendant, El-Tronics, Inc.

William Poole, of Potter, Anderson & Corroon, Wilmington, Del., and Harold W. Wolfram, of Wolfram & Wolfram, New York City, for defendant, B. S. F. Co.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is a derivative action brought on behalf of B.S.F. Company (B.S.F.) seeking damages for alleged mismanagement and wrongful appropriation of B.S.F.'s assets by its former officers. Stipulations of settlement covering all claims raised in the complaint have been approved by the Court and entered into by the parties.[1] The issue presently before the Court concerns the appropriate sums to be allowed to the plaintiff's attorneys as fees in this lawsuit.[2] After approval of the initial stipulation of settlement with the defendants, Huffines and Muscat, and pursuant to the plaintiff's attorneys' motion for fees from the fund generated by that settlement, the Court made an interim allowance of $80,000, and reserved decision on the final figure until certain questions raised by the Court had been resolved and final settlement of the litigation had been consummated.

The questions raised by the Court involved the problem of segregating work done on behalf of the plaintiff and on behalf of the Receiver. These questions have now been explained. The plaintiff's attorneys have satisfied the Court that the work done on this particular litigation has been rigorously and scrupulously distinguished from work performed at the Receiver's request.

The plaintiff's attorneys have requested an over-all additional allowance of $80,000, $45,000 for the first settlement with Muscat and Huffines this being the difference between the interim allowance and the requested $125,000 for the settlement of this litigation with the defendants Muscat and Huffines, and $35,000 for the settlement with Krock. They contend that such an allowance, representing approximately 25% of the total settlement, is just and reasonable in light of the complex and contingent nature of the case, the amount of work actually performed by counsel, and the benefits accruing to B.S.F.

B.S.F. has objected to the plaintiff's attorneys' request for additional fees of $80,000 on two grounds. First, B.S.F. contends that the 25% figure is

1. The Stipulation of Settlement with all defendants other than Krock was approved on February 9, 1972, and the Stipulation with Krock was approved on May 19, 1972.

2. The plaintiff's attorneys were also attorneys for the Receiver appointed for B.S.F. as a result of this action, and were separately recompensed for their services for the Receivership.

excessive for derivative suits of this type, and second, reading its brief in the light most favorable to B.S.F., it argues that the total benefits received by B.S.F. from the settlement are worth considerably less than the amount alleged by the plaintiff.[3] The second objection raises serious questions regarding the propriety of B.S.F.'s previous participation before this Court in the settlement phases of this litigation.

The terms of the settlements have been described previously, however, in light of the present contention of B.S.F., it is necessary to restate them herein and discuss the chronology of the settlement proceedings. Huffines was to pay consideration of $107,500 comprised of (1) $30,525 in cash, (2) the relinquishment of (a) a $29,640 debt and interest thereon to December 31, 1969 which B.S.F. owed him, and (b) outstanding salary claims of $25,000, and (3) a two year collateralized note for $22,335, less interest from December 31, 1969 on the aforementioned debt. Muscat's consideration totalled $383,874 and consisted of (1) $81,300 in cash, (2) the relinquishment of (a) a $190,000 debt and interest thereon to December 31, 1969 owed him by B.S.F. and (b) $64,874 in salary claims, and (3) a two year collateralized note for $47,700 less interest on the debt accruing after December 31, 1969. The Huffines and Muscat notes had principal amounts of $18,580.60 and $23,633.34 respectively, and the plaintiff represented to the Court that the waiver of the December 31, 1969 interest on the debts more than offset the reduction in the face value of the two year notes. Krock settled for $141,815, $95,000 cash and the relinquishment of salary claims of $46,815. In addition, all three men relinquished any claims against B.S.F. they might have for indemnification.

The total value of the settlements was alleged to be $633,189, and so represented to this Court. These representations were made by the plaintiff's attorneys in their papers and affidavits supporting both settlements and their requests for attorneys' fees, as well as orally to the Court during the two hearings scheduled for the Court to examine the acceptability of the proposed settlements. B.S.F.'s attorneys were present at both hearings and had access to all papers filed in this action. Moreover, B.S.F.'s counsel signed the two stipulations presented to this Court for approval which clearly and specifically enumerated the values of the various components of the settlements as well as stating the value of the aggregate payments. However, with the exception of an objection to the sufficiency of the collateral for the Muscat note, at the approval hearing on the Muscat-Huffines settlement, B.S.F. did not raise a single objection to the valuation or validity of the individual items comprising the settlement consideration. In fact, at the first hearing, counsel for B.S.F. specifically accepted the plaintiff's characterization of the proposed settlement. In addition, during the first hearing, after plaintiff's counsel had presented their request for fees predicated upon a total settlement value of more than $490,000, B.S.F.'s counsel spoke in opposition to the application, but made no reference whatsoever to any contention on B.S.F.'s part that the settlement had been erroneously valued.

In its opinion approving the Muscat-Huffines settlement, the Court expressed some concern regarding the correct valuation of certain of the components of the consideration. However, after stressing the importance of B.S.F.'s independent and considered approval, the Court accepted the proposed settlement. After a similar presentation regarding the value of the Krock settlement, the Court once again, with reliance on B.S.F.'s approval, accepted and approved the settlement.

---

3. It would not be unreasonable to read its brief as contending that the loans by Muscat and Huffines may never have been made by them to B.S.F. See Brief of B.S.F. at page 4 where it refers to the "alleged" loan by Muscat, and page 5 where it refers to the "alleged" loan by Huffines.

In addition, prior to each settlement, B.S.F. examined and approved a notice to its stockholders regarding the Court hearing on the settlement proposal. Each notice expressly stated that the value of the consideration was as the plaintiffs presently contend and the Court accepted.

Finally, after numerous months during which the Court was involved in the scrutiny and acceptance of the settlement offers, B.S.F. registered its initial objection to the valuation of the cancellation of salary and debt claims tendered to terminate this action. Such a delay, especially when coupled with the Court's evidenced concern regarding certain components of the consideration, is inexcusable. The Court can only infer that this effort reflects merely a disingenuous attempt by an advocate to minimize litigation costs. To assume otherwise would raise the inexplicable conclusion that B.S.F. has purposely misinformed the Court by suppressing its objections concerning the value of the settlement until after receiving the Court's sanction of the settlement. Such an occurrence would constitute an unconscionable violation of both B.S.F.'s and its counsels' responsibilities to this Court and its shareholders. Lacking intimate familiarity with all phases of derivative suits, courts necessarily rely on new and independent management's approval of settlement offers in exercising a business judgment to accept or reject proffered compromises. Willful concealment or misstatement of the recovering company's position precludes such reliance and undermines the entire submission process for approving such settlements. B.S.F. had no difficulty in assuring the Court of the value of the settlement prior to receiving Court approval for it, and the Court will disregard B.S.F.'s amended contentions regarding valuation at this time.

Another point raised by B.S.F. requires brief comment by the Court. B.S.F. attempts to question the present petition for attorneys' fees by apparently contending that it was inadequately apprised concerning the plaintiff's attorneys' intentions to renew their initial request for a fee of $125,000 for the Muscat-Huffines settlement, as well as to request a fee of $35,000 for the Krock settlement. Such a contention is patently erroneous. Moreover, to the extent B.S.F. is arguing that its shareholders were not informed of the renewal of the initial allowance request by the second notice, it is also without merit. Upon receipt of the notice preceding the initial settlement hearing, the stockholders were notified that the initial settlement was subject to amendment without notification. The Court stated that it felt the initial notice to shareholders was adequate to notify them that the initial allowance application could be renewed. However, it offered B.S.F. an opportunity to provide its shareholders with further notice of the fee application. Evidently, B.S.F. issued no additional notice to its shareholders.

■ Having made these observations, the Court must determine the appropriate compensation to be paid plaintiff's attorneys. In making this determination, the Court will consider primarily: (1) the nature of the employment including the contingency of any remuneration, (2) the result obtained and its consequent benefit to B.S.F., and (3) the length of time and number of hours the attorneys have dedicated to this case. In addition, the Court will take into account the often evidenced strong public policy in encouraging derivative suits which produce tangible beneficial results. See Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 371, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) and Denney v. Phillips and Buttorff Corp., 331 F.2d 249, 251 (6th Cir. 1964).

■ The benefits to B.S.F. from this litigation and settlements are substantial and include factors beyond the specific consideration produced in the settlements. As a result of the plaintiff's efforts, the individual defendants were ousted from management and B.S.F. was placed under a Receiver who brought the

company from the brink of bankruptcy to a posture where it could be turned over to the present management as a viable enterprise. Although these attorneys have been recompensed for the benefits accomplished under the Receivership, they have not been rewarded for their efforts in proving the necessity for the Receiver. In addition, the settlements have produced consideration valued by the parties and B.S.F. at over $630,000. While the case against the individual defendants was a strong one and potential liability was substantial, the Court is aware that efforts to obtain and collect other sizeable judgments against these defendants, particularly Krock, have been difficult and often unsuccessful. The elimination of these actions and the ouster of these defendants from B.S.F.'s management coupled with the moneys actually paid or obligations forfeited constitute a substantial benefit to B.S.F.

This work was done on a contingency basis by able and competent, attorneys many of whom are experts in securities litigation. Moreover, the partners and associates of both firms involved worked more than 2500 hours on the preparation and prosecution of this suit. Contrary to the innuendos implicit in B.S.F.'s brief opposing this fee application, the attorneys performed substantial amounts of work after the termination of the Receivership in further discovery, negotiations, and trial preparation.

Both sets of counsel have cited numerous cases in which attorneys fees varied from between one and forty percent of total recovery. Obviously, such a disparity in allowances evinces the necessity for deciding each case on its particular facts. After consideration of all factors previously enumerated, as well as, the Court's prior uncertainty concerning the proper value to be ascribed certain components of the settlement, the Court concludes that an over-all attorneys' allowance of $130,000, or slightly more than 20% of the $633,189 settlement value agreed to by plaintiff and B.S.F., is just and reasonable in this case.

Thus, the plaintiff's attorneys are entitled to an additional and final allowance of $50,000 plus expenditures.

The Court reaches with considerable reluctance the remarks made regarding B.S.F.'s present posture in opposing this fee application. Hopefully, the arguments reflect an overzealous advocacy of a newly instituted and conscientious management. Nonetheless, the necessity for rigorous self-scrutiny by attorneys and management in derivative actions of this nature made the statements necessary.

The plaintiff's counsel have performed a difficult task in admirable fashion and are fully entitled to the allowances granted. It is this Court's hope that this decision terminates completely this difficult and protracted litigation.

Submit order in accordance herewith.