**Susan J. WEISSMAN, Plaintiff,**

**v.**

**ALLIANCE CAPITAL MANAGEMENT CORPORATION, Donaldson, Lufkin & Jenrette Securities Corporation, Donaldson, Lufkin & Jenrette, Inc., and Alliance Capital Reserves, Defendants.**

**No. 84 Civ. 8904 (WCC).**

United States District Court, S.D. New York.

Dec. 19, 1986.

As Amended Jan. 6, 1987.

Milberg Weiss Bershad Specthrie & Lerach, New York City (Richard M. Meyer, of counsel), for plaintiff.

Seward & Kissel, New York City (Anthony R. Mansfield, of counsel), for defendants Alliance Capital Management Corp., Donaldson, Lufkin & Jenrette Securities Corp. and Donaldson, Lufkin & Jenrette, Inc.

Obermaier, Morvillo & Abramowitz, P.C., New York City (Otto G. Obermaier, of counsel), for defendant Alliance Capital Reserves.

WILLIAM C. CONNER, District Judge:

This shareholders' derivative action is before the Court on the application of plaintiff's attorneys for an award of counsel fees and expenses.

*Background*

Plaintiff Susan J. Weissman, a shareholder of defendant Alliance Capital Reserves ("the Fund"), a money-market mutual fund, brought the action under the Investment Company Act of 1940 ("the Act"), as amended, 15 U.S.C. §§ 80a-1 to 80a-64 (1982 & Supp. II 1984), seeking to recover on behalf of the Fund payments it made to defendant Alliance Capital Management Corporation ("ACMC"), its investment adviser, pursuant to two agreements. Under the first agreement, which the parties have termed the Advisory Agreement, the Fund pays ACMC an annual fee currently set at one-half of one percent of the Fund's net assets in exchange for investment advice and other management services. Under the second agreement, which the parties have termed the Distribution Assistance and Administrative Services Plan ("the Plan"), the Fund makes payments to ACMC amounting annually to fifteen one-hundredths of one percent of the Fund's net assets and ACMC pays various expenses associated with distributions to the shareholders.

Subject matter jurisdiction of the action was based upon § 44 of the Act, 15 U.S.C. § 80a-43 (1982). Plaintiff alleged two causes of action. First, she contended that ACMC breached its fiduciary duty to the Fund under § 36(b) of the Act, 15 U.S.C. § 80a-35(b) (1982), by receiving excessive and unreasonable compensation pursuant to these two agreements. Second, plaintiff contended that prior to September 11, 1984 the composition of the Fund's board of directors violated the provisions of § 10(b)(2) of the Act, 15 U.S.C. § 80a-10(b)(2) (1982), and, that as a result, the agreements in question are void and unenforceable under §§ 15 and 47 of the Act, 15 U.S.C. §§ 80a-15, -46 (1982). In her ad damnum clause, plaintiff asked the Court to require ACMC "to pay to the Fund its damages."

In an Opinion and Order dated November 26, 1985, the Court granted defendants' motion under Rule 39(a), Fed.R.Civ.P. to strike plaintiff's demand for jury trial on the ground that the "damage" remedy sought by plaintiff was in substance the equitable remedy of restitution, as had been ruled by Judge Milton Pollack of this Court in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 487 F.Supp. 999 (S.D.N.Y.1980), a ruling as to which the Court of Appeals denied a writ of mandamus, *sub nom.* In re *Gartenberg*, 636 F.2d 16 (2d Cir.1980).

Following a period of discovery, the parties entered into a stipulation of settlement providing that the fee payable to ACMC under the Advisory Agreement would remain 0.50% of the Fund's net assets up to $1.25 billion, but would be scaled down in steps of 0.01% for each additional $250 million of assets up to $2.0 billion, to 0.46% on assets between $2.0 billion and $3.0 billion, and to 0.45% on assets above $3.0 billion. The agreement further provided that for five years after its effective date, ACMC would not seek an increase in the fee except with prior approval of the Court. It also provided that plaintiff's counsel would apply to the Court for an allowance of their counsel fees and disbursements to be paid by ACMC, and that defendants would not object thereto if the counsel fees did not exceed $100,000 and the disbursements did not exceed $7,500.

Pursuant to the agreement, the Court scheduled a hearing as to the reasonableness of the settlement terms on October 17, 1986. At the hearing, the Court indicated that it could not pass upon the reasonableness of the terms without evidence as to the level of compensation for advisory services paid by comparable mutual funds, and requested counsel to supply this information. In response to this request, ACMC's counsel submitted an affidavit setting forth the advisory fees paid by twelve other funds having assets in excess of $800 million, the approximate size of the Fund at

the time this action was commenced. Ten of these other funds pay a straight fee of 0.50% of net assets, regardless of size, while the other two pay fees on a sliding scale, one scaling downwardly from 0.50% to 0.45% and the other from 0.54% to 0.46%.

Based upon this information and that previously submitted (including the fact that the only previous action brought under § 36(b) of the Act, *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 528 F.Supp. 1038 (S.D.N.Y.1981), *aff'd*, 694 F.2d 923 (2d Cir.1982) had resulted in a judgment for the defendants), the Court approved the settlement on November 26, 1986 by signing the proposed Order and Judgment submitted by the parties. That document was provided with blank spaces to be filled in by the Court with the amounts allowed for counsel fees and expenses. However the affidavit filed by plaintiff's counsel respecting the time expended by them and their out-of-pocket disbursements had apparently been misplaced in the clerk's office. Therefore, instead of filling in these blanks, the Court interlineated a directive that "[t]he attorneys for plaintiff shall submit evidence of their services and disbursements for approval of the Court."

Pursuant to that order, plaintiff's attorneys refiled the affidavit stating that they had devoted to the case approximately 228 hours of attorneys' time and 4.5 hours of paralegal time, for a total of $59,699.50 which would have been charged at their customary non-contingent hourly billing rates. The affidavit also asserted that the out-of-pocket expenses of plaintiff's attorneys total $15,362.84. They seek an award of $100,000 in counsel fees and $7,500 in disbursements, the maximum amounts which the settlement agreement would allow without objection by defendants.

*Discussion*

In *City of Detroit v. Grinnell*, 495 F.2d 448, 468–74 (2d Cir.1974), the Court of Appeals for the Second Circuit ruled that in fixing counsel fees, the district court should begin with a "lodestar" figure computed by multiplying the number of hours expended times the normal hourly charge rate therefor. This lodestar figure may then be adjusted to take into account "less objective factors" such as the contingency of the fee arrangement, the hazards of loss in the litigation, and the benefits achieved. This approach was similar to that prescribed in the seminal opinion of the Court of Appeals for the Third Circuit in *Lindy Bros. Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir.1973). In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court, in discussing the procedure for fixing counsel fees to be awarded the prevailing plaintiff in a civil rights action under 42 U.S.C. § 1988, emphasized that the lodestar figure is merely the starting point in the analysis, and that the "crucial factor" is the extent of the plaintiff's success.

The lodestar figure is frequently increased to provide an incentive for able and busy lawyers to act as private attorneys general and assume the burden of handling, on a contingent fee basis, litigation involving unpredictable chances of success. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807 (1966); *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir.1973). However, in appropriate circumstances the lodestar figure may be reduced, or counsel fees even disallowed altogether. *Brown v. Stackler*, 612 F.2d 1057 (7th Cir.1980). If the attorneys' work on unsuccessful claims was unrelated to the effort on successful claims, the former time should be disallowed. *Hensley v. Eckerhart, supra*, 461 U.S. at 435, 103 S.Ct. at 1940.

In the present case, the Court accepts the representations of plaintiff's attorneys as to the number of hours expended by them in the litigation, and their normal hourly charge rates. However, the Court finds that no upward adjustment of this lodestar figure would be appropriate because the benefits achieved were slight at best. The only concession which plaintiff obtained from ACMC for the shareholders as a result of the settlement was a

slight and gradual scaling down of the advisory fee if the net assets of the Fund exceed $1.25 billion.[1] At the time the stipulation of settlement was negotiated, the Fund's assets were below that breakpoint. As of November 13, 1986, when the affidavit in support of the settlement terms was executed, *The New York Times* reported that the Fund's net assets had increased to $1.266 billion, or $16 million above the $1.25 billion breakpoint. If the Fund's net assets continue at the same level, the saving in advisory fees would amount to 0.01% of $16 million or only $1,600 per year. That reduction represents only twenty-five ten thousands of one per cent of $6.33 million which is the annual advisory fee payable to ACMC when the assets of the Fund are $1.266 billion.

Even if the Fund's net assets should hereafter increase by 20% to $1.5 billion, as plaintiff's counsel projects, the annual saving in fees would amount to only $25,000, a reduction of only one-third of one per cent from $7.5 million, which is the annual fee which ACMC would have been paid at the $1.5 billion asset level in the absence of the settlement.

It is difficult to imagine that such a miniscule reduction in ACMC's fees could not have been negotiated without litigation. After all, sliding scale fees are commonplace in the industry, undoubtedly because of economies of size, and there is surely fierce competition in the furnishing of advisory services in return for annual fees in the high seven-digit range—or at least there would be if it were not for the apparently widespread interlocking of management personnel between mutual funds and investment advisory firms.

In exchange for this trifling fee concession, plaintiff dropped its claim for "damages" or restitution of past overcharges, as well as its claim that the composition of the Fund's board of directors rendered the agreements with ACMC unenforceable in their entirety. Indeed, the consent judgment gave defendants complete and permanent immunity from such claims by all the Fund's shareholders "past, present or future." The minor potential reduction in future advisory fees which ACMC granted was a remarkably cheap premium to pay for such insurance.

The Court is fully appreciative of the fact that plaintiff's counsel fees will be paid by ACMC and not by the Fund. Thus it would be easy for the Court simply to fix the fees of plaintiff's counsel at the $100,000 level which they seek and which ACMC has agreed to pay without objection. However, the Court can find no reason thus to reward and encourage litigation which is settled to produce such scant benefit for the shareholders.

The Court must be sensitive to the fact that when counsel fees are negotiated as part of the settlement package, plaintiff's attorneys are unavoidably subject to a conflict of interest: there is inevitably a strong temptation to negotiate higher fees for themselves at the sacrifice of benefits for the plaintiff class. *See* Manual For Complex Litigation, Second (1985), § 23.24, pp. 174–176; Manual For Complex Litigation, 5th Ed. (1982), pp. 62–63. It is perhaps significant that nowhere in the voluminous submissions in this case have the attorneys represented that the negotiation of counsel fees was deferred until after all the other terms of settlement had been agreed upon. Cf. *Malchman v. Davis*, 761 F.2d 893, 904–05 (2d Cir.1985) and cases cited therein.

The Court does mean to suggest that in this case plaintiff's able and experienced counsel yielded to such economic pressure and put their own interests above those of the shareholders, but merely to recognize that courts must always be alert to the existence of such influences, particularly where, as here, the benefits conferred on

---

**1.** The Fund agreed to retain separate counsel to advise the outside trustees of the Fund; however, the fees of such counsel will be paid by the Fund and not by ACMC. As previously mentioned, ACMC agreed to pay plaintiff's counsel fees as fixed by the Court, but this provision put the shareholders in no better position than they would have been in if the action had not been brought.

the plaintiff class are so slight and the parties agree to counsel fees which include a substantial premium over the lodestar figure.

For the foregoing reasons, the Court finds that no increase in the lodestar figure is warranted. The Court will allow plaintiff counsel fees of $56,699.50 and expenses of $7,500.[2]

SO ORDERED.

**2.** The Court is aware that because the actual disbursements of plaintiff's counsel amounted to $15,362.84, the allowance of only $7,500 in expenses effectively reduces their counsel fees by $7,862.84, to a net of $48,836.66. This effec-

tive reduction is believed to be appropriate because the settlement represented only a marginal success on one claim and a total loss on the others.