Shirley PRICE, as Executrix for
the Estate of Sherrelldein
Price, Plaintiff,

v.

WILMINGTON TRUST COMPANY,
Defendant.

Civil Action No. 12476.

Court of Chancery of Delaware,
New Castle County.

Submitted: Sept. 22, 1997.
Decided: Oct. 7, 1997.
Revised: Oct. 9, 1997.

Francine R. Solomon, Wilmington, Delaware, of counsel Todd S. Collins, (argued), of Berger & Montague, P.C., Philadelphia, Pennsylvania, for Plaintiff, Shirley Price.

William J. Wade, (argued), Frederick L. Cottrell, III, and John T. Dorsey, of Richards, Layton & Finger, Wilmington, Delaware, for Defendants.

## OPINION

LAMB, Vice Chancellor.

### I. *Background*

Plaintiff seeks an order certifying this action for breach of express trust as a class action, pursuant to Chancery Court Rules 23(a) and 23(b)(3), consisting of two classes, as follows: (i) all beneficiaries of express trusts for which Wilmington Trust Company ("WTC") acted as trustee, the assets of which at any time during the period August 1, 1983 through May 7, 1987 were invested, in whole or in part, in the Wilmington Trust Short–Term Money Market fund, the Wilmington Trust Short–Term Tax Exempt Fund, or the Wilmington Trust Government Securities Fund (collectively the "Short Term Funds") ("Class 1"), and (ii) all beneficiaries of express trusts for which WTC acted as trustee, the assets of which at any time during the period August 1, 1983 through September 1, 1989 were invested, in whole or in part, in the Short–Term Funds or the Rodney Square Money Market Fund, and who "were charged sweep fees where little or no 'sweeping' in fact occurred or where sweeping was inappropriate or unnecessary."

There is no dispute that the numerosity, commonality and typicality requirements of Rule 23(a)(1), (2) and (3) are satisfied. Rather, defendant makes two principal arguments. First, defendant asserts that plaintiff Price is not an adequate representative of the class under Rule 23(a)(4), and second, that there are individual issues of fact concerning the application of the doctrine of laches or the statute of limitations to the claims of individual class members which so outweigh the questions of law or fact common to the putative classes as to make class action certification unsuitable under Rule 23(b)(3). For the following reasons, I conclude that Ms. Price is an adequate, if not ideal, plaintiff, and that, as to Class 1, questions of law and fact common to the members of the class predominate over individual questions of fact, including issues relating to the application of the statute of limitations. I reach a different conclusion as to Class 2 which, I find, is so broadly and imprecisely defined as to lead to the conclusion that issues of law or

fact affecting only individual members may predominate both during the course of discovery and trial, making class action treatment unfair and unmanageable. Thus, the motion is granted in part and denied in part.

## II. *Adequacy of Ms. Price to Serve as Class Representative*

Two interrelated bases are urged for finding Ms. Price to be an inadequate class representative. First, WTC suggests that because Ms. Price suffers from mental or physical infirmities she does not satisfy the requirements of Rule 23(a)(4), and therefore, she is unsuitable for the role of class representative. Second, based upon certain events during the course of the litigation, WTC argues that Ms. Price does not play a meaningful role in the case and has permitted her counsel more or less unfettered control over the course of the litigation.

The fourth requisite to certification as a class representative under Rule 23(a) requires a judicial determination that "the representative parties will fairly and adequately protect the interests of the class." Ct.Ch.R. 23(a)(4). While courts seek to certify only those plaintiffs who will best represent the class, the individual need not be "the best of all representatives, but [rather] one who will pursue a resolution of the controversy in the interests of the class." *Ross v. A.H. Robins Co.*, 100 F.R.D. 5, 6 (S.D.N.Y.1982) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y.1981) (citations omitted)). Additionally, what constitutes adequate representation is a question of fact which is determined only after reviewing the circumstances of each case individually. *See* 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1765 (1986).

### A. *Ms. Price's Physical or Mental State*

Plaintiff Shirley Price is the daughter and executrix of the original named plaintiff, Sherrelldein Price. Ms. Price is not in perfect health. In August 1996, she suffered a stroke and was hospitalized for some time. On August 23, 1996, this Court issued an order appointing a temporary guardian of her person and property "for the sole and exclusive limited purpose of seeking to have a medical evaluation made of her current mental and physical state by a Court-appointed guardian *ad litem.*" The Court also appointed a temporary guardian *ad litem* "for the purpose of examining any and all medical and psychiatric records concerning Shirley R. Price prepared during the six months prior to the date of this Order and to interview the medical and psychiatric personnel who have met with her for the purpose of submitting to the Court a report offering a properly documented opinion as to what type of living arrangements would best suit Shirley R. Price's needs and as to whether the appointment of a permanent guardian of her person and/or her property should be considered at this time."

The guardian *ad litem*, Nicholas R. Bischoff, Esquire, submitted a report to the Court dated September 18, 1996, in which he related his findings and recommendations. Most pertinent for the purposes of the pending motion for class certification are the following:

> Ms. Price was admitted to the hospital on August 21, 1996, having been discovered lying on the floor of her home by neighbors. Evidently, she had been lying there for a week or more before her discovery.

> Medical records revealed that Ms. Price was suffering from significant intercerebral bleeding. She was diagnosed with expressive aphasia and was unable to move her extremities. She also had numerous small to large pressure sores on her right side with tissue necrosis.

> According to one of Ms. Price's neighbors, the house in which Ms. Price lived alone was, on August 21, 1996, in a

deplorable state, with ankle deep trash on the floor of the kitchen and no food in the refrigerator.

In the opinion of the guardian *ad litem*, Ms. Price was "unable to properly manage and care for her person and property because of her age, infirmity and physical incapacity and that a guardian should be appointed for her."

The record in the guardianship action does not indicate any further proceedings concerning the appointment of a permanent guardian.

In connection with her reply brief on the motion for class action certification, Ms. Price submitted two affidavits discussing her capacity to serve as class representative. The first is the Affidavit of Barbara Tevebaugh, dated March 10, 1997. The second is Ms. Price's own affidavit of March 8, 1997. Ms. Tevebaugh is a social worker at the Medical Center of Delaware who first visited Ms. Price on September 5, 1996 and who thereafter was in regular contact with Ms. Price. Evidently Ms. Tevebaugh has experience in evaluating the need for the appointment of guardians, having worked in the Delaware Public Guardian's office and having "frequently screened for the competence of patients." In pertinent part, her affidavit relates:

> As of March 10, 1997, Ms. Price had almost fully recovered from the effects of the "stroke" suffered in August, 1996.
>
> Ms. Price is lucid, coherent, competent, and able to participate in a lawsuit and to understand and assist in the proceedings.
>
> Ms. Price was not then in need of the appointment of a guardian; Mr. Bischoff's contrary conclusion is based on observations made shortly after the stroke, before the more recent material improvement in Ms. Price's condition.

Ms. Price's affidavit recites that she is both physically and mentally healthy and that her judgment and long-term memory are unimpaired. Her affidavit also related that the temporary guardian appointed by the Court on August 23, 1996 had not been in contact with her for "several months."

At argument, counsel for plaintiff informed the Court that Ms. Price suffered another stroke in July of this year and submitted a supplemental affidavit from Ms. Tevebaugh. In that affidavit, Ms. Tevebaugh repeats her earlier observations, stating that, although the most recent stroke has left Ms. Price with "expressive aphasia (difficulty talking)," her understanding and processing skills remain the same. Ms. Tevebaugh repeats her conclusion that Ms. Price's "reasoning, memory and judgment are intact."

Based on the state of the record, I conclude that Ms. Price currently has the physical and mental capacity to serve as class representative. While this conclusion is based on the unusual facts of this case, I note that there exists a line of cases in which courts have certified individuals despite the existence of medical conditions which raised questions as to the representative's ability adequately to represent the class. *See, e.g., Ross v. Robins Co.,* 100 F.R.D. 5 (S.D.N.Y.1982) (certifying plaintiff as class representative despite physician's advice to discontinue involvement in case); *Moskowitz v. Lopp,* 128 F.R.D. 624 (E.D.Pa.1989) (certifying 81 year old man who suffered heart attack rendering him incapable of being deposed in foreseeable future); *In re Consumers Power Co. Securities Litig.,* 105 F.R.D. 583 (E.D.Mich. 1985) (finding that even though plaintiff 72 years old and under doctor's care for dizzy spells court satisfied plaintiff's physical problems did not render him inadequate); *Fischer v. International Telephone and Telegraph Corp.,* 72 F.R.D. 170 (E.D.N.Y. 1976) (stating that plaintiff 70 years old and suffering from one or more disabilities "scarcely seems to be an adequate ground for denial of class certification"). So, while I have addressed the issues raised by defense counsel, I conclude that Ms. Price is capable of fulfilling her duties as a class representative and find that her medical

condition will not prevent her from adequately representing the class.

The report of the temporary guardian *ad litem*, Mr. Bischoff, is simply too out of date for me to rely on it in disregard of the affidavits of Ms. Tevebaugh and Ms. Price, attesting to her recovery from her medical problems and her ability to attend to her own needs and business.[1] Of course, should it later appear that Ms. Price is or has become incapable of serving as the class representative, I will revisit this issue and deal with the question on a better developed and more timely record. *See Wolfson v. Riley*, 94 F.R.D. 243, 246 (N.D.Ohio 1981) (noting that in certifying class court will closely scrutinize course of litigation and if necessary will exercise its powers under Rule 23 to make any additional orders which may be necessary); *Moskowitz*, 128 F.R.D. at 635 (certifying class but stating issue could be revisited and that court would take-up any remedial measures needed at that time).

### B. *Ms. Price's Interest in and Supervision of the Litigation*

■ WTC suggests that two incidents show that Ms. Price is not actively involved in the conduct of this litigation. These are first that Ms. Price did not inform her counsel of her mother's death despite the fact that she spoke with them shortly afterward, and second, that plaintiff's motion for class certification was filed while Ms. Price was hospitalized as the result of the stroke suffered in August 1996 and unable to attend to her own needs. In that motion, plaintiff's counsel, nonetheless, represented that Ms. Price "will thoroughly and adequately protect the interests" of the class. These incidents are said to show such a lack of communication between client and counsel to lead to the conclusion that Ms. Price has surrendered unfettered control over the litigation to her counsel.

Plaintiff responds to this suggestion with an affidavit detailing her personal involvement in the conduct of this litigation since its inception, her personal attendance at important hearings, and her frequent contact with her counsel regarding the conduct of the litigation. She denies that she has given her counsel unfettered control over the matter and represents that she is actively involved in the pursuit of the litigation.

While the timing of the class certification motion does suggest that Ms. Price did not play a significant role in the ultimate preparation and filing of that document, the present record does not permit me to conclude that she has turned over control of this litigation to her counsel. On the contrary, despite her obvious medical problems, Ms. Price has shown and continues to show a strong interest in this litigation. Additionally, I attach no significance to Ms. Price having neglected to inform class counsel of her mother's death.

■ While the ideal class representative would be "vigorous, informed, and intimately involved with the prosecution of his suit," this is not the standard by which to grant or deny certification as a class representative. *See Ross*, 100 F.R.D. at 6 (stating class representative need not be best of all representatives). The law does not require that Ms. Price be a perfect class representative, as that would preclude certification of individuals merely because they lack the educational background necessary to understand the sophisticated concepts presented in many class actions. Rather, Ms. Price must merely show that she is an adequate one. *See Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (finding Polish immigrant with limited education and a poor command of the English language and who relied heavily on advice of son-in-law to be adequate class representative).

---

**1.** I note that WTC conducted no discovery in connection with this class certification mo-tion, of either Ms. Price or any other person.

In the absence of any discovery record in this matter, I cannot conclude that Ms. Price does not meet this standard. She apparently is interested in pursuing this litigation and, despite her medical problems, has the mental and physical ability to do so. *See* Newberg on Class Actions, 3rd Ed., § 3.36, 3–192 (1992) (stating most courts have had little difficulty rejecting challenges to adequacy of class representative based on physical condition of plaintiff). The reality is that most plaintiffs do not possess the requisite expertise to litigate class actions, and this is precisely the reason why they need to rely predominantly on counsel in prosecuting such suits. Merely because plaintiff must rely heavily on counsel does not necessarily mean counsel is prosecuting the case with "unfettered discretion." Ms. Price, in coordination and consultation with her counsel, is apparently able to pursue this litigation in the best interests of the class, therefore, I will certify her as a class representative.

III. *The Predominance of Common Issues of Fact and Law*

A. *Certification as to Class 1*

■ Defendant asserts that class certification of Class 1, pursuant to Chancery Court Rules 23(a)(3) and 23(b)(3), is inappropriate because, it claims, trial of this matter will require proof as to each member of the putative class, as an element of the claim asserted, facts sufficient to avoid the application of the legal statute of limitations.[2] Thus, WTC argues, class action certification is inappropriate under Rule 23(a)(3) because questions of law and fact common to the class do not predominate over questions affecting only individual members, citing *Gaffin v. Teledyne, Inc.*, Del.Supr., 611 A.2d 467 (1992). Moreover, WTC contends, in essence that this is the law of the case, in reliance upon Chancellor Allen's prior decision dismissing the original complaint. *Price v. Wilmington Trust Co.*, Del.Ch., C.A. No. 12476, Allen, C., 1995 WL 317017 (May 19, 1995) (Mem. Op.).

In his opinion granting defendant's motion to dismiss the original complaint, Chancellor Allen stated that because the complaint, on its face, showed that it arose out of facts which were more than three years old, plaintiff had the burden of pleading facts tending to excuse or justify her delay in instituting the action. *Price v. Wilmington Trust Co.*, Del.Ch., C.A. No. 12476, Allen, C., 1995 WL 317017 (May 19, 1995) Mem.Op. at 7–8. Because plaintiff had failed to plead any such facts the Chancellor dismissed the complaint but granted plaintiff sixty days in which to file an amended complaint pleading such additional facts. *Id.* at 8, 1995 WL 317017.

After the Amended Complaint was filed, WTC moved for summary judgment rather than renew its motion to dismiss. As to Class 1, Chancellor Allen framed the issue as follows, in terms generally applicable to the members of Class 1:

> The claim with respect to the management fees charged for management of the Short–Term Funds presents a threshold issue on this motion: whether trust beneficiaries had reason to know that, in addition to its compensation as trustee, Wilmington Trust Company was indirectly charging fees to their trusts for management services to the Short Term Funds.

*Price v. Wilmington Trust Co.*, Del.Ch., C.A. No. 12476, Allen, C., 1996 WL 451318 (August 6, 1996) Mem.Op. at 8. The record submitted by WTC in support of its summary judgment motion showed that "[t]here is no dispute here between the parties concerning the manner in which and extent to which WTC disclosed the fact that it was charging fees in connection with the new 'sweeping' service it provided." *Id.* at 7, 1996 WL 451318. On the

---

**2.** The relevant portion of section 8106 states "no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action...." 10 *Del.C.* § 8106.

basis of this record, Chancellor Allen held that there was nothing shown that would permit him to charge the plaintiff "with good reason to know that management fees were being netted out at the Fund level." *Id.* at 8, 1996 WL 451318.

Notwithstanding this finding, of apparent class-wide application, defendants rely upon the decision on the motion to dismiss in contending that each of the remaining members of the class should be required affirmatively to prove that they too were "ignorant" of the facts underlying the cause of action. Because each class member must make this showing, defendants urge, class certification is inappropriate under the authority of *Gaffin.*

A review of the Amended Complaint and record of the summary judgment motion shows that the claims asserted by Ms. Price and by her on behalf of the other Class 1 members raise the same factual and legal issues. As relates to the disclosure of the management fee charged by WTC for the management of the Short Term Funds, it would appear that the same disclosure was made to members of Class 1 in general. In his Opinion denying defendant's motion for summary judgment, Chancellor Allen concluded that the named plaintiff was not chargeable with reason to know that the Funds were paying management expenses to WTC, thereby tolling the statute of limitations as to Ms. Price. *Price v. Wilmington Trust Co.,* Del.Ch., C.A. No. 12476, Allen, C., 1996 WL 451318 (August 6, 1996) Mem.Op. at 8. There is nothing before me to suggest a different result for members of Class 1 as a whole.

The Supreme Court's decision in *Gaffin* does not suggest or require a different result. In *Gaffin* the Court decertified a class due to the fact that a necessary element (justifiable reliance) of the underlying cause of action (fraud) was not susceptible of proof on a class-wide basis.[3] *See Gaffin,* 611 A.2d at 474–75. Here, the Amended Complaint is based on WTC's alleged breach of trust, not, as in *Gaffin,* any claim of fraud. Thus, detrimental reliance is not an element of plaintiff's claim. Moreover, the Amended Complaint adequately alleges facts sufficient to excuse or justify the delay in instituting the action. Thus, plaintiff will have no further burden, at trial, to go forward with any proofs relating to the potential application of the statute of limitations to this matter. Rather, to the extent that WTC is able to adduce any additional evidence that one or more trust beneficiaries actually received notice that WTC was indirectly collecting a fee for the management of the Short Term Funds, proof of such fact will relate to WTC's affirmative defense setting up the statute of limitations as a bar to recovery by such beneficiary or beneficiaries. I do not read *Gaffin* as disapproving class action certification in these circumstances.

As the Supreme Court noted in its Order affirming Chancellor Allen's denial of defendant's Motion for Summary Judgment, there may be questions of fact as to whether any individual beneficiary had actual notice of the management fees. *Wilmington Trust Co. v. Price,* Del.Supr., 692 A.2d 416 (1997) (ORDER). These claims, however, relate to the defendant's affirmative defense, and as such are not part of plaintiff's case. At the conclusion of the trial, if plaintiff prevails on the merits of her case, defendant is free to raise the defense with regard to any class member, at which time the Court will hear evidence to determine whether application of the statute of limitations as to the claims of that individual class member is appropriate.

### B. *Certification as to Class 2*

While I am satisfied Class 1, as proposed, fulfills the requirements of Rules 23(a) and (b)(3), I am unable to reach the same conclusion with regard to Class 2, which plaintiff defines to include all benefi-

---

3. In reaching this conclusion the Supreme Court stated "[a] class action may not be maintained in a purely common law or equitable fraud case since individual questions of law or fact, particularly as to the element of justifiable reliance, will inevitably predominate over common questions of law or fact." *Gaffin,* 611 A.2d at 474.

ciaries of express trusts for which WTC acted as trustee, and who "were charged sweep fees where little or no 'sweeping' in fact occurred or where sweeping was inappropriate or unnecessary." Certification of Class 2 is inappropriate on two grounds. First, as currently defined, resolution of the claims as to Class 2 would appear to require particularized findings of fact as to each member, in direct contravention of the requirements of Rule 23(b)(3). Second, because individualized findings of fact will be required, serious questions regarding the manageability of the class, both during discovery and at trial, arise. *See* Ct.Ch.R. 23(b)(3)(d).

■ As a predicate to class action certification, Rule 23(b)(3) requires a finding "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members...." Ct.Ch.R. 23(b)(3). The proposed definition of Class 2 precludes this finding, as to either legal or factual issues. In the original complaint plaintiff alleged, *inter alia*, that "the sweep fees charged to [the putative class members] by WTC were excessive and illegal, because WTC was already charging the maximum fees permitted by Rule 132." In that form, both the legal and factual issues presented were common to the class. In its Amended Complaint, however, plaintiff alleges, as to Class 2, only that WTC charged sweep fees where "little or no 'sweeping' in fact occurred or was appropriate or necessary." The issues so framed are, in contrast to the matters alleged originally, so lacking in specificity and general legal content as, apparently, to require a trust-by-trust factual examination and trust-by-trust determination of liability. The need for such a particularized examination would seem to preclude class treatment. *See Gaffin,* 611 A.2d at 474–75.

Neither the Amended Complaint nor the moving papers makes any effort to provide an overarching framework for analyzing whether a sweeping fee was "appropriate" or "necessary." Nor does plaintiff other-wise attempt to give meaning to the word "little" as used in alleging that fees were charged where "little or no 'sweeping' in fact occurred." Admittedly the duties of a trustee do not permit the imposition of a charge where no service is rendered, and arguably do not permit the imposition of a charge exceeding the benefit derived or likely to be derived by the trust from the service. If it were limited in its definition to trust beneficiaries in those situations, there might be a basis to certify Class 2, as there might then be a preponderance of legal and factual issues common to the class as a whole. But the proposed class definition extends well beyond these situations to encompass circumstances where services are rendered and substantial benefits realized but where the fee charged is, nevertheless, alleged to be unnecessary or inappropriate. Without some yardstick to apply on a class-wide basis, it is difficult if not impossible to discern, beyond the limited cases described above, the circumstances needed to support a finding that a particular fee charged was inappropriate or unnecessary. It is this extra breadth of the proposed class definition which, I conclude, so injects individual issues of law and fact into the proceeding as to overwhelm the questions of law or fact common to the class. In sum, determining when fees were "appropriate" or "necessary" would require a case-by-case, as opposed to class-wide, analysis.

■ The same overbreadth raises substantial issues under Rule 23(b)(3)(D) about the manageability of Class 2. Most notably, the class is defined in such a way that there would be no means, *a priori,* of determining whether or not a given trust beneficiary was a member of the class. The very definition depends on a finding of liability that would not, in the usual case, be made until after trial. Thus, persons receiving the notice would not know if they belonged to the class but would be required to make a decision whether to opt out or not. The same lack of definition would require WTC to produce for examination records of every express trust charged a "sweep fee" during the class

period. Finally, trial would require me to review and consider the particular trust records of countless trusts, in order to determine whether or not, in each instance, a breach of trust occurred. Unless some as yet unidentified mechanism were adopted to contend with this mass of particularized fact, litigation of Class 2 would appear to be unworkable.

## IV. *Conclusion*

For these reasons, the motion to certify Class 1 as a class action pursuant to Rules 23(a) and 23(b)(3) is **granted** and the motion to certify Class 2 for class action treatment is **denied.** As is customary, the certification of Class 1 is made conditionally and may be altered or amended for good reason before the entry of a decision on the merits. In accordance with Rule 23(c) notice shall be given promptly, including individual notice to all persons who can be identified from WTC's record with reasonable effort.